EPSTEIN BECKER & GREEN, P.C.
Attorneys for Defendant
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 642-1900

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------x

PATIENT CARE ASSOCIATES, LLC, a/s/o  :
C.B and V.G.,                             :

                 Plaintiffs,  :     Civil Action No. 13-cv-1472-ES-SCM

                                :

*vs.*                                   :

UNITED WATER; ABC CORP. (1-10)  :
(said names being fictitious and    :
unknown entities),                 :

               Defendants.  :     **Document Electronically Filed**

                                :

---------------------------------------------------x

## CERTIFICATION OF JAMES P. FLYNN, ESQ.
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

JAMES P. FLYNN, ESQ., of full age and upon his oath, hereby certifies as follows:

1.      I am an attorney at law in the State of New Jersey, and a member of the law firm of Epstein, Becker & Green, P.C., attorneys for Defendant United Water New Jersey Inc. ("United Water" or "Defendant") in this matter. I submit this Certification in Support of Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6).

2.      Attached as **Exhibit 1** is a true copy of relevant portions of United Water's 2010 Medical Summary Plan Description.

3.      Attached as **Exhibit 2** is a true copy of relevant portions of United Water's 2011 Medical Summary Plan Description.

4.      Attached as **Exhibit 3** is a true copy of the opinion in Schirmer v. Principal Life Ins. Co., No. 08-2406, 2008 WL 4787568 (E.D.Pa. Oct. 29, 2008).

5.      Attached as **Exhibit 4** is a true copy of the opinion in Cornejo v. Horizon Blue Cross/Blue Shield of New Jersey, No. 11-7018, 2012 U.S. Dist. LEXIS 28654 (D.N.J. March 5, 2012).

6.      Attached as **Exhibit 5** is a true copy of the opinion in Eichorn v. AT&T, 2005 WL 3609003 (D.N.J. 2005).

7.      Attached as **Exhibit 6** is a true copy of the opinion in Tannenbaum v. UNUM Life Ins. Co. of America, 2004 WL 1084658 (E.D.Pa. 2004).

8.      Attached as **Exhibit 7** is a true copy of the opinion in Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan, 2009 WL 692398 (3d Cir. 2009).

9.      Attached as **Exhibit 8** is a true copy of the opinion in Zahl v. Cigna Corp., No. 09-1527, 2010 U.S. Dist. LEXIS 32268 (D.N.J. Mar. 31, 2010).

10.     Attached as **Exhibit 9** is a true copy of the opinion in Morley v. Avaya, Inc. Long Term Disability Plan, No. 04-409, 2006 WL 2226336 (D.N.J. Aug. 3, 2006).

11.     Attached as **Exhibit 10** is a true copy of the opinion in Chang v. Life Ins. of North America, 2008 WL 2478379 (D.N.J. June 17, 2008).

12.     Attached as **Exhibit 11** is a true copy of the opinion in Our Lady of Lourdes Health Sys. v. MHI Hotels, Inc. Health and Welfare Fund, No. 09-1875, 2009 U.S. Dist. LEXIS 111875 (D.N.J. Dec. 1, 2009).

13.     Attached as **Exhibit 12** is a true copy of the opinion in Shinn v. Champion Mortgage Co. Inc., 2010 WL 500410 (D.N.J. Feb. 5, 2010).

FIRM:23142674v1

14.     Attached as **Exhibit 13** is a true copy of the opinion in CJS Corporate Center, LLC v. Merrill Lynch Mortg. Lending, Inc., 2010 WL 3075694 (App. Div. 2010).

15.     Attached as **Exhibit 14** is a true copy of May 1, 2013 correspondence from a representative of the administrator of United Water's self-funded insurance plan confirming that no administrative appeal was filed by C.B.  The document has been redacted to protect the privacy of C.B.

16.     Attached as **Exhibit 15** is a true copy of the opinion in Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co., 2010 U.S. Dist. LEXIS 128289 (D.N.J. December 6, 2010).

I certify under penalty of perjury that the foregoing statements are true and correct.

*s/ James P. Flynn*
James P. Flynn
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
Telephone:  (973) 642-1900
Facsimile:  (973) 642-0099
Email:  jflynn@ebglaw.com

DATED:  May 1, 2013

EXHIBIT 1

UNITED WATER 2010 BENEFITS

## HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY
# MEDICAL SUMMARY PLAN DESCRIPTION



# Table of Contents

**About This Booklet** ...................................................................................................1

**Eligibility and Enrollment** ........................................................................................2
  Eligibility ...................................................................................................................2
  Enrollment..................................................................................................................4
  When Coverage Begins..............................................................................................5
  Changing Your Elections ...........................................................................................7

**The United Water Medical Plan Options** .............................................................10
  BCBS EPO Plan Coverage Chart ............................................................................11
  BCBS PPO Plan Coverage Chart.............................................................................15
  BCBS HDHP with Health Savings Account (HSA) Plan Coverage Chart ............19

**Horizon Blue Cross Blue Shield New Jersey Plans** .............................................23
  How the Health Savings Account Works .................................................................23
  Provider Directory ...................................................................................................24
  Your BCBS  ID Card ...............................................................................................24
  Network Care ...........................................................................................................25
  Out-of-Network Care ...............................................................................................25
  Annual Deductible ...................................................................................................25
  Coinsurance..............................................................................................................26
  Reasonable and Customary Charges ........................................................................26
  Out-of-Pocket Maximum .........................................................................................26
  Lifetime Maximum ..................................................................................................27
  Mental Health and Substance Abuse Treatment......................................................27
  Coordination of Care................................................................................................29
  Covered Medical Expenses......................................................................................32
  Medical Expenses Not Covered ..............................................................................39

**Prescription Drug Plan**..........................................................................................42
  BCBS EPO and BCBS PPO Plans...........................................................................42
  BCBS HDHP with Health Savings Account (HSA) Feature ..................................42
  How the Prescription Drug Plan Works...................................................................43
  Prescription Drug Plan Identification Card..............................................................43
  Brand and Generic Drugs.........................................................................................44
  Retail ........................................................................................................................44
  Mail-Order ...............................................................................................................45
  Covered and Non-Covered Prescription Drugs .......................................................45

**How to File a Claim** ...............................................................................................47
  When to File Claims .................................................................................................48
  How and When Claims Are Paid .............................................................................50
  Adverse Benefit Determination ...............................................................................51

**Coordination of Benefits** ......................................................................................54
  How Coordination Works .........................................................................................55
  Coordination with Medicare ....................................................................................56

Right of Recovery ............................................................................................. 57

**Recovery Provisions ............................................................................. 58**

Refund of Overpayments ................................................................................ 58

Acts of Third Parties ...................................................................................... 58

**When Coverage Ends ............................................................................. 61**

When You Leave the Company ...................................................................... 61

If You Become Disabled ................................................................................. 61

If You Have an Authorized Leave of Absence .............................................. 61

If You Take a Military Leave .......................................................................... 62

If You Die While a Plan Participant .............................................................. 62

Certificates of Coverage ................................................................................ 62

**COBRA .................................................................................................. 63**

How Long COBRA Coverage May Continue ................................................. 64

COBRA Notification ....................................................................................... 65

Trade Act of 2002 ........................................................................................... 69

Early Termination of COBRA Coverage ....................................................... 69

COBRA and FMLA ......................................................................................... 70

Coverage Certificates ..................................................................................... 70

**Situations Affecting Your Coverage ..................................................... 71**

**Administrative Information ................................................................... 72**

Plan Sponsor ................................................................................................... 72

Plan Type ........................................................................................................ 72

Plan Name ....................................................................................................... 72

Plan Number ................................................................................................... 72

Plan Year ......................................................................................................... 72

Employer Identification Number ................................................................... 72

Plan Administrator ......................................................................................... 72

Claims Administrator ..................................................................................... 73

Agent for Service of Legal Process ............................................................... 73

Plan Funding and Type of Plan Administration ........................................... 73

Plan Termination and Amendment ................................................................ 73

Your Legal Rights ........................................................................................... 74

**Glossary ................................................................................................ 76**

**Important Telephone Numbers ............................................................. 80**

If you request a claim form but do not receive it within 15 days, you can file a claim without it by sending the bills with a letter, including all of the information listed above.

## When to File Claims

You must give Horizon BCBSNJ written proof of loss within 15 months after the date the expenses are incurred. Horizon BCBSNJ will determine if enough information has been submitted to enable proper consideration of the claim. If not, more information may be requested.

No benefits are payable for claims submitted after the 15-month period, unless it can be shown that:

- It was not reasonably possible to submit the claim during the 15-month period, or
- Written proof of loss was given to Horizon BCBSNJ as soon as was reasonably possible.

All claims for eligible expenses must be submitted for processing no later than March 31 of the year immediately following the year in which the expense was incurred. For example, medical expenses incurred in 2009 must be submitted no later than March 31, 2010.

The BCBS Plans recognize four categories of medical benefit claims:

- **Urgent Care Claims** — Claims for which the application of non-urgent care timeframes could seriously jeopardize the life or health of the patient or the ability of the patient to regain maximum function, or, in the judgment of a physician with knowledge of your medical condition, would subject the patient to severe pain that cannot be adequately managed otherwise.
- **Pre-service Claims** — Claims which must be decided before a patient will be afforded access to health care (for example, preauthorization or precertification requests).
- **Post-service Claims** — Claims involving the payment or reimbursement of costs for medical care that has already been provided.
- **Concurrent Care Claims** — Claims where the BCBS Plan has previously approved a course of treatment over a period of time or for a specific number of treatments, and the BCBS Plan later reduces or terminates coverage for those treatments.

## Initial Benefit Determination

### Urgent Care Claims

Horizon BCBSNJ will notify you of the determination, whether adverse or not, as soon as reasonably possible, taking into account medical requirements but, no later than 72 hours after receipt of the claim, unless you fail to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the BCBS Plan. In the case of such a failure, Horizon BCBSNJ will notify you as soon as possible, but no later than 24 hours after receipt of the claim by BCBS, of the specific information necessary to complete the claim. Notification of the improper filing may be made orally, unless the claimant requests written notification. You will be afforded a reasonable amount of time, taking into account the circumstances, but no less than 48 hours, to provide the specified information. Horizon BCBSNJ will notify you of the benefit determination as soon as possible, but no later than 48 hours after the earlier of Horizon BCBSNJ's receipt of the specified information or the end of the period afforded you to provide the specified additional information.

## Pre-Service Claims

Horizon BCBSNJ will notify you of the determination no later than 15 days after receipt of the claim. This period may be extended by 15 days, provided Horizon BCBSNJ determines that an extension is necessary due to matters beyond the control of Horizon BCBSNJ and notifies you within the initial period of the circumstances requiring the extension and the date by which the BCBS Plan expects to render a decision. If such an extension is necessary due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the required information.

If the claim is improperly filed, Horizon BCBSNJ will notify you as soon as possible, but no later than five (5) days after receipt of the claim by the BCBS Plan, of the specific information necessary to complete the claim and the proper procedures to follow. Notification of the improper filing may be made orally unless the claimant requests written notification. You will only receive notification of a procedural failure if your claim is received by BCBS and it includes (i) your name, (ii) your specific medical condition or symptom, and (iii) a specific treatment, service or product for which approval is requested. You will be afforded at least 45 days from receipt of the notice within which to provide the specified information.

## Post-Service Claims

For non-urgent post-service health claims, BCBS has up to 30 days to evaluate and respond to claims for medical benefits. The 30-day period begins on the date the claim is first filed. This period may be extended by 15 days provided Horizon BCBSNJ or its delegate determines that an extension is necessary due to matters beyond the control of the BCBS Plan, and notifies you within the initial period of the circumstances requiring the extension and the date by which the BCBS Plan expects to render a decision. In addition, the notice of extension must include the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim and the additional information needed to resolve those issues. You will be afforded at least 45 days from receipt of the notice within which to provide the specified information.

If you file a claim for a prescription you obtained at a retail or mail-order pharmacy, that claim will be treated as a post-service claim.

## Concurrent Care Claims

Concurrent care claims may fall under any of the other three categories, depending on when the appeal is made. However, if you are receiving concurrent care benefits and the BCBS Plan decides to reduce or terminate the course of treatment before the end of the previously approved treatment period (other than by health plan amendment or termination), you will be notified of the adverse benefit determination sufficiently in advance of the reduction or termination to allow you ample time to request a review of the decision and obtain a determination upon review before the benefit is reduced or terminated.

## All Claims

An "adverse benefit determination" is a denial, reduction or termination of a benefit, or failure to provide or pay for (in whole or in part) a benefit. This can also include a denial to participate in the BCBS Plan. For health coverage, an adverse benefit determination also means a claim denial on the grounds that the treatment is experimental or investigational or not medically necessary. This also

includes concurrent care determinations. In the event of an adverse benefit determination, the claimant will receive notice of the determination. The notice will include:

- The specific reasons for the adverse determination,
- The specific plan provisions on which the determination is based,
- A request for any additional information or material needed to reconsider the claim and the reason this information or material is needed,
- A description of the BCBS Plan's review procedures and the time limits applicable to such procedures,
- A statement of your right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review,
- If any internal rules, guidelines, protocols or similar criteria were used as a basis for the adverse determination, either the specific rule, guideline, protocols or other similar criteria or a statement that a copy of such information will be made available free of charge upon request,
- For adverse determinations based on medical necessity, experimental treatment or other similar exclusions or limits, an explanation of the scientific or clinical judgment used in the decision, or a statement that an explanation will be provided free of charge upon request, and
- For adverse determinations involving urgent care, a description of the expedited review process for such claims. This notice (72-hour timeframe) can be provided orally within the timeframe for the expedited process, as long as written notice or electronic notification is provided no later than three days after the oral notice.

## How and When Claims Are Paid

All payments will be paid to you as soon as Horizon BCBSNJ receives satisfactory proof of loss, except in the following cases:

- If you have financial responsibility under a court order for a dependent's medical care, Horizon BCBSNJ will make payments directly to the provider of care,
- If Horizon BCBSNJ pays benefits directly to network providers,
- If you request in writing that payments be made directly to a provider. You can do this when completing the claim form.

These payments will satisfy Horizon BCBSNJ's obligation to the extent of the payment.

Any benefits continued for dependents after your death will be paid to one of the following:

- The surviving spouse,
- A dependent child who is not a minor, if there is no surviving spouse,
- A provider of care who makes charges to your dependents for covered services and supplies, and
- The legal guardian of your dependent.

## Explanation of Benefits Statements

After your claim is processed, Horizon BCBSNJ will send you an Explanation of Benefits (EOB) statement. The EOB will explain how Horizon BCBSNJ considered each of the charges submitted for payment. If any claims are denied or denied in part, the covered employee will receive a written explanation.

EXHIBIT 2



UNITED WATER **2011 BENEFITS**

# HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY
# MEDICAL SUMMARY PLAN DESCRIPTION

# Table of Contents

About This Booklet ...................................................................................... 1

Eligibility and Enrollment ........................................................................... 2
  Eligibility .................................................................................................. 2
  Enrollment ................................................................................................ 4
  When Coverage Begins ............................................................................. 6
  Changing Your Elections .......................................................................... 7

The United Water Medical Plan Options ................................................. 10
  BCBS PPO Plan Coverage Chart ............................................................ 15
  BCBS HDHP with Health Savings Account (HSA) Plan Coverage Chart ... 15

Horizon Blue Cross Blue Shield New Jersey Plans ................................. 19
  How the Health Savings Account Works ................................................. 19
  Provider Directory .................................................................................. 20
  Your BCBS ID Card ................................................................................ 20
  Network Care .......................................................................................... 21
  Out-of-Network Care .............................................................................. 21
  Annual Deductible .................................................................................. 21
  Coinsurance ............................................................................................ 22
  Reasonable and Customary Charges ....................................................... 22
  Out-of-Pocket Maximum ........................................................................ 22
  Lifetime Maximum .................................................................................. 23
  Mental Health and Substance Abuse Treatment .................................... 23
  Coordination of Care .............................................................................. 25
  Covered Medical Expenses ..................................................................... 28
  Medical Expenses Not Covered .............................................................. 35

Prescription Drug Plan ............................................................................. 38
  BCBS PPO Plans ..................................................................................... 38
  BCBS HDHP with Health Savings Account (HSA) Feature .................... 38
  How the Prescription Drug Plan Works ................................................. 39
  Prescription Drug Plan Identification Card ............................................ 39
  Brand and Generic Drugs ....................................................................... 40
  Retail ...................................................................................................... 40
  Mail-Order .............................................................................................. 41
  Covered and Non-Covered Prescription Drugs ...................................... 41

How to File a Claim ................................................................................... 43
  When to File Claims ................................................................................ 44
  How and When Claims Are Paid ............................................................. 46
  Adverse Benefit Determination .............................................................. 47

Coordination of Benefits .......................................................................... 50
  How Coordination Works ....................................................................... 51
  Coordination with Medicare .................................................................. 52
  Right of Recovery ................................................................................... 53

**Recovery Provisions**......................................................................**54**
   Refund of Overpayments .............................................................54
   Acts of Third Parties ...................................................................54
**When Coverage Ends** .....................................................................**57**
   When You Leave the Company ....................................................57
   If You Become Disabled .............................................................57
   If You Have an Authorized Leave of Absence .............................57
   If You Take a Military Leave ......................................................58
   If You Die While a Plan Participant ............................................58
   Certificates of Coverage .............................................................58
**COBRA** ..........................................................................................**59**
   How Long COBRA Coverage May Continue ..............................60
   COBRA Notification ..................................................................61
   Trade Act of 2002 .....................................................................65
   Early Termination of COBRA Coverage.....................................65
   COBRA and FMLA ...................................................................66
   Coverage Certificates .................................................................66
**Situations Affecting Your Coverage** ............................................**67**
**Administrative Information**...........................................................**68**
   Plan Sponsor .............................................................................68
   Plan Type ..................................................................................68
   Plan Name .................................................................................68
   Plan Number .............................................................................68
   Plan Year...................................................................................68
   Employer Identification Number .................................................68
   Plan Administrator .....................................................................68
   Claims Administrator .................................................................69
   Agent for Service of Legal Process .............................................69
   Plan Funding and Type of Plan Administration ...........................69
   Plan Termination and Amendment ..............................................69
   Your Legal Rights......................................................................70
**Glossary** ........................................................................................**72**
**Important Telephone Numbers** .....................................................**76**

Please read your statement carefully because it will verify that the claim was processed correctly. The statement also will inform you of any claim denial.

## Legal Actions

You may not sue on a claim before 60 days after proof of loss has been given to Horizon BCBSNJ. You may not sue after three years from the time proof of loss is required, unless the law in the area where the covered employee lives allows for a longer period of time.

# Adverse Benefit Determination

An "adverse benefit determination" is a denial, reduction or termination of a benefit, or failure to provide or pay for (in whole or in part) a benefit. This can also include a denial to participate in the plan. An adverse benefit determination also means a claim denial on the grounds that the treatment is experimental or investigational or not medically necessary. This also includes concurrent care determinations. In the event of an adverse benefit determination, the claimant will receive notice of the determination. The notice will include:

- The specific reasons for the adverse determination;
- The specific plan provisions on which the determination is based;
- A request for any additional information needed to reconsider the claim and the reason this information is needed;
- A description of the plan's review procedures and the time limits applicable to such procedures;
- A statement of your right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review;
- If any internal rules, guidelines, protocols or similar criteria was used as a basis for the adverse determination, either the specific rule, guideline, protocols or other similar criteria or a statement that a copy of such information will be made available free of charge upon request;
- For adverse determinations based on medical necessity, experimental treatment or other similar exclusions or limits, an explanation of the scientific or clinical judgment used in the decision, or a statement that an explanation will be provided free of charge upon request; and
- For adverse determinations involving urgent care, a description of the expedited review process for such claims. This notice can be provided orally within the timeframe for the expedited process, as long as written notice is provided no later than three days after the oral notice.

## Appealing a Claim

If you receive notice of an adverse benefit determination and disagree with the decision, you are entitled to apply for a full and fair review of the claim and the adverse benefit determination. You (or an appointed representative) can appeal and request a claim review within 180 days after receiving the denial notice. The request must be made in writing and should be filed with Horizon BCBSNJ at the following address:

> Horizon Blue Cross Blue Shield New Jersey
> P.O. Box 1219
> Newark, NJ  07101-1219

The request should include:

- The patient's name and the identification number from the ID card,
- The date(s) of medical service(s),
- The provider's name,
- The reason the covered person believes the claim should be paid, and
- Any documentation or other written information to support the covered person's request for claim payment.

Horizon BCBSNJ will forward the appeal request to the appropriate named fiduciary for review. The review will be conducted by Horizon BCBSNJ, or another appropriate named fiduciary of the BCBS PPO Plans who is neither the individual who made the adverse benefit determination which is the subject of the review, nor the subordinate of such individual (including any physicians involved in making the decision on appeal if medical judgment is involved). Where the adverse determination is based in whole or in part on a medical judgment, the reviewer will consult with an appropriate health care professional. No deference will be afforded to the initial adverse benefit determination. You will have the opportunity to submit written comments, documents, records, and other information relating to the claim, and you will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits. Whether a document, record or other information is relevant to the claim will be determined in accordance with the applicable DOL regulations. The review will take into account all comments, documents, records and other information submitted by the claimant relating to the claim without regard to whether such information was submitted or considered in the initial benefit determination.

Horizon BCBSNJ will notify you of the determination on review within the following timeframes:

- For urgent claims, as soon as possible considering the situation, but no later than 72 hours,
- For pre-service claims, within a reasonable period of time given the situation, but no later than 30 days (or 15 days following each appeal if there are two mandatory appeals),
- For post-service claims, within a reasonable period of time, but no later than sixty (60) days after receipt of the request for review (or thirty [30] days following each appeal if there are two mandatory appeals).

In certain cases, any of the BCBS Plans may obtain a limited extension of time if notice of the extension is provided to the claimant before the end of the initial decision-making period.

Horizon BCBSNJ will provide you with written or electronic notification of the determination on review. In the case of an adverse benefit determination, such notice will indicate:

- The specific reason for the adverse determination on review,
- Reference to the specific provisions of the BCBS Plan on which the determination is based,
- A statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits,
- A description of your right to bring a civil action under ERISA following an adverse determination on review,
- If any internal rules, guidelines, protocols or similar criteria were used as a basis for the adverse determination, either the specific rule, guideline, protocols or other similar criteria or a statement that a copy of such information will be made available free of charge upon request,

- For adverse determinations based on medical necessity, experimental treatment or other similar exclusions or limits, an explanation of the scientific or clinical judgment used in the decision, or a statement that an explanation will be provided free of charge upon request, and
- A description of your right to obtain additional information upon request about any voluntary appeals procedures under any of the BCBS Plans.

All interpretations, determinations and decisions of any of the BCBS Plans with respect to any claim, including without limitation, the appeal of any claim, shall be made by Horizon BCBSNJ or other claims fiduciary, in its sole discretion, based on the BCBS Plan and comments, documents, records, and other information presented to it. All decisions are final, conclusive and binding unless determined to be arbitrary and capricious by a court of competent jurisdiction.

EXHIBIT 3

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2008 WL 4787568 (E.D.Pa.)
**(Cite as: 2008 WL 4787568 (E.D.Pa.))**

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Thomas SCHIRMER and Marc Smith, Plaintiffs,
v.
PRINCIPAL LIFE INSURANCE CO., et al., De-
fendants.

Civil Action No. 08–cv–2406.
Oct. 29, 2008.

West KeySummary**Federal Civil Procedure 170A**
**675.1**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(B) Complaint
      170AVII(B)1 In General
        170Ak675 Alternate, Hypothetical and
Inconsistent Claims
          170Ak675.1 k. In General. Most
Cited Cases

**Federal Civil Procedure 170A 1828**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1827 Determination
          170Ak1828 k. Time of Determina-
tion; Reserving Decision. Most Cited Cases

**Federal Civil Procedure 170A 2497.1**

170A Federal Civil Procedure

170AXVII Judgment
  170AXVII(C) Summary Judgment
    170AXVII(C)2 Particular Cases
      170Ak2497 Employees and Employ-
ment Discrimination, Actions Involving
        170Ak2497.1 k. In General. Most
Cited Cases

Genuine issue of material fact as to whether em-
ployees' claims against employer were subject to
ERISA precluded summary judgment in suit alleging
failure to pay certain compensation, marketing reim-
bursements, deferred compensation, and stock op-
tions. Employees also filed state law claims in the
event that the claims were not subject to ERISA.
Dismissing employees' state law claims at such an
early stage of litigation would be premature. Allowing
employees to plead state claims in the alternative
permitted them to maintain a cause of action if the
facts ultimately indicated that any of the plans were
not subject to ERISA. Employee Retirement Income
Security Act of 1974, § 514(a), 29 U.S.C.A. § 1144(a).

Fred Warren Jacoby, Julie Beth Negovan, Cozen &
O'Connor, Philadelphia, PA, for Plaintiffs.

Andrew J. Soven, Reed Smith, LLP, Thomas J.
McGarrigle, Philadelphia, PA, for Defendants.

***MEMORANDUM AND ORDER***
JOYNER, District Judge.
  **\*1** Presently before the Court is Defendants' Mo-
tion to Dismiss Counts I, II, III, VI, VIII, IX, and X of
Plaintiffs' Amended Complaint pursuant to Rule
12(b)(6), Plaintiffs' Response thereto, and Defendants'
Reply. For the reasons set forth below, the Defendants'
Motion to Dismiss is granted in part and denied in
part.

**I. BACKGROUND**
Plaintiffs Marc Smith ("Smith") and Thomas

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4787568 (E.D.Pa.)
**(Cite as: 2008 WL 4787568 (E.D.Pa.))**

Schirmer ("Schirmer") are in the business of selling financial services and products to businesses and individuals as well as managing, directing, and overseeing the same.[FN1] Defendants are three related companies—Principal Life Insurance Company ("PLIC"), Principal Financial Group ("PFG"), and Princor Financial Services Corporation ("Princor").[FN2] From 2002 until earlier this year, Smith and Schirmer worked for Defendants as Co–Managing Directors in the Philadelphia area and as representatives of their dealer/broker—Princor. Prior to joining Defendants, Plaintiffs had successful careers working for a different nationwide provider of financial services. This suit arises out of alleged misrepresentations made by Defendants to entice Plaintiffs into working for Defendants and subsequent breaches of various contracts and agreements by Defendants, as well as alleged tortious behavior on the part of the Defendants prior to and during the employment relationship.

> FN1. The facts are presented in the light most favorable to the Plaintiffs. *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008).

> FN2. Princor is a subsidiary of Principal Services Trust Company, which is a subsidiary of PLIC. Although not stated in the complaint, Principal Services Trust Company is a member company of PFG.

In January of 2002, Defendants began engaging in an effort to solicit Plaintiffs away from their positions at Provident Mutual Life Insurance Company ("Provident") and its subsidiary, 1717 Capital Management Company ("1717"). Plaintiffs repeatedly made it known to Defendants that they would not leave Provident and 1717 if doing so would negatively impact their income and earning potential. It therefore became a necessary term and condition of employment that Plaintiffs' compensation would equal or exceed their salaries prior to joining Defendants. Letters outlining Schirmer's expectations for compensation and Defendants' offer of compensation were eventually exchanged and, in reliance on Defendants' offer, Schirmer began his affiliation with the Defendants as a Management Consultant on June 24, 2002. In reliance on Defendants' commitment to provide the same terms and conditions to Smith, Smith joined PLIC as a Management Consultant in the Fall of 2002.

Smith and Schirmer shortly thereafter became Co–Managers in Philadelphia and in October, 2002, both signed Co–Manager Agreements with PLIC. Smith and Schirmer also entered into Agent Contracts with PLIC that provided for commissions to be paid to Smith and Schirmer and contracts with Princor to act as Registered Representatives on behalf of Princor. Under the various agreements, Smith and Schirmer were also entitled to receive benefits under the 401k Plan and Senior Executive Retire Plan ("SERP"), additional payment under Principal Life Insurance Company's Deferred Compensation Plan, stock options, and reimbursement for marketing expenses.

**\*2** Within the first year of employment, Plaintiffs began battling with Defendants to obtain the compensation to which they were entitled and to have Defendants make good on their obligations and agreements. Over the years, Plaintiffs and Defendants continually disagreed on what was owed to Plaintiffs and on how certain factors that determined how commissions and remuneration were to be calculated. These battles culminated with Schirmer retiring from the company on December 31, 2007 and Smith resigning on May 26, 2008.

Immediately preceding Smith's resignation, Plaintiffs filed the instant action alleging, *inter alia,* that Defendants have failed to comply with the terms of the various contracts and with the additional agreements made between the parties. They assert that despite repeated demands Defendants have failed to pay certain compensation, marketing reimbursements, deferred compensation and stock options. In addition,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4787568 (E.D.Pa.)
(Cite as: 2008 WL 4787568 (E.D.Pa.))

Schirmer alleges that Defendants have intentionally manipulated circumstances to reduce the value and amount of his compensation and other remuneration, causing him to suffer substantial losses and damages. He also alleges that Defendants misrepresented to him the effect of his retirement on his stock options and then unilaterally cashed out his stock options without turning over the proceeds. Smith additionally alleges that PLIC coerced him to sign a Restricted Stock Agreement that improperly converted his previously contracted for bonuses into Restricted Stock Units and that this agreement was signed under duress and without consideration. Smith further alleges that he was forced to resign as a result of circumstances occurring over the weekend of May 23, 2008, when Defendants restricted access to offices and files and locked Smith and his team out of the office, making him unable to conduct his business.

Plaintiffs complaint includes ten separate counts, some of which are pled in the alternative. Defendants have moved to dismiss seven of the ten counts.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), in response to a pleading, a Defendant may file a motion asserting that the Plaintiffs complaint "[fails] to state a claim upon which relief can be granted." In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level ....' " Id. at 232 (quoting Bell Atl. Corp. v. Twombley, 550 U.S. 544, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular

cause of action. Id. at 234. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombley, 127 S.Ct. at 1964–65. In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint." In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir.1999).

## III. DISCUSSION
### A. Count I—ERISA Violations

*3 "Except in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir.2002) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir.1990)). Thus, an ERISA claim "is subject to dismissal if it does not plead or otherwise deal with the issue of exhaustion." Balmat v. CertainTeed Corp., 2004 WL 2861873, at *3 (E.D.Pa. Dec.9, 2004) (quoting Campbell v. Prudential Ins. Co. of Am., 2002 WL 462085, at *2 (E.D.Pa. Mar.25, 2002)). However, exhausting administrative remedies is excused if it would be futile to do so. Harrow, 279 F.3d at 249. A party claiming this exception must make a "clear and positive showing that further attempts to seek redress under the plan would be futile." Balmat, 2004 WL 2861873 at *3.

Plaintiffs' Complaint does not plead that they exhausted the claim and appeals procedures set forth by each Plan in question. The Complaint does state, however, that "Schirmer and Smith fulfilled all of their obligations and conditions under the various plans," and Plaintiffs argue that this statement is sufficient to plead exhaustion. We disagree. We reiterate that, under Twombley and its progeny, a "formulaic recitation" of the legal requirements for a cause of action will not survive a motion to dismiss. 127 S.Ct. at 1964–65. Plaintiffs' bare-bones assertion of "compliance" with unidentified "obligations" is nothing more than a mere recitation of the exhaustion requirement under ERISA, and it therefore cannot sur-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4787568 (E.D.Pa.)
**(Cite as: 2008 WL 4787568 (E.D.Pa.))**

vive Defendants' Motion to Dismiss. However, we will give Plaintiffs leave to amend their Complaint in order to properly plead facts pertaining to their exhaustion of each Plan's claim and appeals processes (or their failure to do so). *See Campbell,* 2002 WL 462085, at *2 (allowing ERISA plaintiff to amend complaint to properly plead exhaustion, should it be applicable).

**B. Count II—Common Law Claims under Deferred Compensation Plan, 401K and SERP**

ERISA preempts "any and all State laws insofar ... as they relate to any employee benefit plan" to which ERISA applies. *See* 29 U.S.C.A. § 1144(a) (1998 & Supp.2008). "[T]he express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.' " *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). A plaintiff's state law claims pled in the alternative will nonetheless survive a motion to dismiss where there is doubt whether a plan is subject to ERISA, regardless that they will be preempted if ERISA ultimately does apply. *See Coleman v. Standard Life Ins. Co.,* 288 F.Supp.2d 1116, 1121 (E.D.Cal.2003) (denying motion to dismiss state claims before determining whether ERISA applied). Both the ERISA claims and the state claims, however, would not be able to survive the summary judgment stage. *Nicolaysen v. BP Amoco Chemical Co.,* 2002 WL 1060587, at *5 (E.D.Pa. May 23, 2002).

*4 Plaintiffs have pled common law claims in the alternative in the event that the Deferred Compensation Plan, 401k Plan, or SERP Plan is not subject to enforcement under ERISA. Defendants move to dismiss these claims as entirely preempted by ERISA. They argue that any state law claim related to Plan-managed assets or Plan benefits clearly relates to a benefits plan and that here there is no doubt the Plans are employee benefits plans covered by ERISA.

Plaintiffs respond that they are entitled to plead in the alternative because there has been no legal determination that the Plans are subject to ERISA and dismissing the state law claims at this early stage in the litigation would unfairly prejudice them if it were later determined that some or all of their claims were not subject to ERISA. Defendants in reply urge us to determine at this point whether the plans are subject to ERISA.

Dismissing Plaintiffs' state law claims at this early stage of the litigation would be premature. Allowing the Plaintiffs' to plead state claims in the alternative permits them to maintain a cause of action if the facts ultimately bear out that any of the plans—for whatever unlikely reason—are not subject to ERISA. *See Nicolaysen,* 2002 WL 1060587, at *5. Although, as Defendants point out, Plaintiffs have averred in their complaint that the Plans are governed by ERISA and hence subject to its enforcement provisions, Plaintiffs are permitted by the Federal Rules of Civil Procedure to plead alternative claims regardless of their consistency. *See* Fed.R.Civ.P. 8(d). Whether the Plans are subject to ERISA can be determined during the summary judgment stage of the proceedings. Defendants Motion to Dismiss Count II is denied.

**C. Count III—Request for Accounting**

Under Pennsylvania law,

An equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, *or* the plaintiff possesses an adequate remedy at law.

*Rock v. Pyle,* 720 A.2d 137, 142 (Pa.Super.1998). Thus, an equitable accounting is proper where there is no adequate remedy at law and there is also a fiduciary relationship between the parties, alleged fraud or misrepresentation, or mutual and complicated accounts. *Greencort Condominium Ass'n*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4787568 (E.D.Pa.)
**(Cite as: 2008 WL 4787568 (E.D.Pa.))**

_v. Greencort Partners_, 2005 WL 2562909, *7 (Pa.Com.Pl. Oct.4, 2005); _Koch v. First Union Corp._, 2002 WL 372939, * 12 (Pa.Com.Pl. Jan.10, 2002); _see also Poeta v. Jaffe_, 2001 WL 1113012, *4 (Pa.Com.Pl. May 30, 2001) (dismissing equitable accounting claim where accounts were mutual and complicated but there was an adequate remedy at law). "Equitable jurisdiction for an accounting does not exist merely because the plaintiff desires information that he could obtain through discovery." _Buczek v. First Nat'l Bank of Mifflintown_, 366 Pa.Super. 551, 531 A.2d 1122, 1124 (Pa.Super.1987).

ERISA also includes disclosure and reporting provisions. _See_ 29 U.S.C. § 1025(a) (1998 & Supp.2008). Under ERISA, the administrator of a defined benefit plan must, _inter alia,_ provide a pension benefit statement to a plan participant or beneficiary upon request. _Id._ § 1025(a)(1)(B); _Barrowclough v. Kidder, Peabody & Co._, 752 F.2d 923, 933 (3d Cir.1985), _overruled in part by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc._, 7 F.3d 1110, 1112 (3d Cir.1993).

**\*5** Plaintiffs' Complaint does not specify whether an accounting is sought under Pennsylvania law or under ERISA. Their complaint, however, fails to plead facts sufficient to defeat a motion to dismiss under either. Although Plaintiffs' aver in their response that the accounts are mutual and complicated, they have failed entirely to plead an inadequate remedy at law. Plaintiffs have stated only that they are "entitled to an accounting from Defendants" and that Defendants are solely in possession of the necessary information Plaintiffs seek. Moreover, Plaintiffs are demanding money damages for alleged breach of contract and violations under ERISA. It appears, therefore, that an adequate remedy at law exists and that the information sought can be obtained through ordinary discovery. _See Poeta,_ 2001 WL 1113012, *4 (finding an adequate remedy at law where the claim was for money damages based on breach of contract). Thus, there is no need for an equitable accounting.

The Plaintiffs' response also makes reference to the requirement under ERISA to provide an accounting upon request and asserts that Defendant PLIC, as Administrator of the Deferred Compensation and SERP Plans, failed to comply with this law. A conclusory allegation that a Defendant "failed to comply" with section 1025(a) is nothing more than a mere recitation of the disclosure requirements under ERISA, and, as such, cannot survive Defendants' Motion to Dismiss. _See Twombley,_ 127 S.Ct. at 1964–65. Plaintiffs have failed in their pleadings to aver any facts relating to a request for, or subsequent denial of, an accounting under ERISA. Plaintiffs have merely stated that they are entitled to an accounting and that the Defendants are solely in possession of information necessary to the Plaintiffs. Defendants' motion to dismiss Count III is, therefore, granted.

**D. Count VIII—Unjust Enrichment**
As previously stated, pursuant to Rule 8, Plaintiffs may plead multiple claims in the alternative regardless of consistency. Fed.R.Civ.P. 8(d). Federal courts specifically allow plaintiffs to plead a contract claim and an unjust enrichment claim in the alternative, regardless that the plaintiff will ultimately be able to recover under only one theory. _See, e.g., Cornell Co. v. Borough of New Morgan,_ 512 F.Supp.2d 238, 265 (E.D.Pa.2007); _U.S. v. Kensington Hosp._, 760 F.Supp. 1120, 1132 (E.D.Pa.1991). Plaintiffs here have properly pled an unjust enrichment claim in the alternative. Defendant's motion to dismiss Count VIII is denied.

**E. Counts VI, IX and X—Rescission of the 2007 and 2008 Restricted Stock Agreements (Smith), Fraud (Smith & Schirmer), and Negligent Misrepresentation (Schirmer)**
When engaging in a conflict-of-law analysis, Federal District Courts apply the conflict-of-law rules of the forum state to determine which state's substantive law applies. _Klaxon Co. v. Stentor Electric Manufacturing Co._, 313 U.S. 487, 486 (1941); _Garcia v._

*Plaza Oldsmobile,* 421 F.3d 216, 219 (3d Cir.2005). Pennsylvania's choice-of-law analysis involves a hybrid approach that " 'combines the approaches of both Restatement [ (Second) of Conflict of Laws] (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy).' " *Garcia,* 421 F.3d at 219 (quoting *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311 (3d Cir.1978). Under Pennsylvania's choice-of-law analysis, the Court must first determine whether there is a true conflict between the alleged competing bodies of law. *Hammersmith v. Tig Insurance Co.,* 480 F.3d 220, 230 (3d Cir.2007); *Garcia,* 421 F.3d at 220. There is a true conflict if, after engaging in an analysis of the policies underlying the laws of the interested states, the governmental interests of each jurisdiction would be impaired by applying the other jurisdiction's law. *Hammersmith,* 480 F.3d at 230; *Garcia,* 421 F.3d at 220. Where a true conflict exists, the Court must then " 'weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue' " to determine which state has a greater interest in the application of its law. *Hammersmith,* 480 F.3d at 231 (quoting *Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 400 (3d Cir.1987). "Because choice of law analysis is issue specific, different states' laws may apply to different issues in a single case." *Berg Chilling Systems v. Hull Corp.,* 435 F.3d 455, 462 (3d Cir.2006).

*6 Smith has pled in the alternative to his breach of contract claim that the 2007 and 2008 Restricted Stock Agreements should be rescinded for lack of consideration or because the agreement was signed under duress. The Defendants move to dismiss this claim, arguing that Smith has not pled sufficiently extraordinary facts or the particular circumstances regarding the alleged duress to support rescission of a contract and that Smith's continued employment constituted sufficient consideration for the Agreements. Smith and Schirmer have also both pled Fraud claims and Schirmer has in addition pled a Negligent Mis-

representation claim. Defendants move to dismiss these claims as precluded by the gist of the action doctrine and the economic loss doctrine.

The Plaintiffs and Defendants are in disagreement over which state's law controls in each of these claims. Defendants argue that Pennsylvania law applies [FN3] whereas Plaintiffs assert that Iowa law is controlling. This Court finds that granting Defendants' Motion to Dismiss in regard to these counts at this time would be premature. Pennsylvania's choice-of-law analysis involves a fact-intensive inquiry that can be more properly addressed at the summary judgment stage of the proceedings once the record has been more fully developed through discovery. *See Kilpatrick v. Sheet Metal Workers Int'l Ass'n Local Union No. 19,* 1996 WL 635691, *4 (E.D.Pa. Oct.30, 1006) (citing *Lejeune v. Bliss–Salem, Inc.,* 85 F.3d 1069 (3d Cir.1996). Defendant's Motion to Dismiss Counts VI, IX, and X is, therefore, denied.

> FN3. In regard to Count VI (Rescission), Defendants in their reply brief also allude to the possibility that Delaware law may control.

### ORDER

AND NOW, this 29th day of October, 2008, upon consideration of Defendants' Motion to Dismiss (Doc. No. 9) and responses thereto (Doc. Nos.11, 13), it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. Count I (ERISA Violations) of Plaintiffs' Complaint is hereby dismissed with leave to amend. Count III (Request for an Accounting) of Plaintiffs' Complaint is hereby dismissed. Defendants' motion in regard to the remaining counts is denied.

E.D.Pa.,2008.
Schirmer v. Principal Life Ins. Co.
Not Reported in F.Supp.2d, 2008 WL 4787568 (E.D.Pa.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4787568 (E.D.Pa.)
**(Cite as: 2008 WL 4787568 (E.D.Pa.))**


END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 4



1 of 1 DOCUMENT

**DIANA CORNEJO, Plaintiff, v. HORIZON BLUE CROSS/BLUE SHIELD OF NEW JERSEY, ET AL., Defendant.**

**Civil Action No. 11-7018 (SRC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2012 U.S. Dist. LEXIS 28654*

**March 2, 2012, Decided
March 5, 2012, Filed**

**NOTICE:**   NOT FOR PUBLICATION

**COUNSEL:**   [*1] For DIANA CORNEJO, Plaintiff: FRANK A. TOBIAS, TOBIAS & KAPLAN, ESQS., PERTH AMBOY, NJ.

For EMPLOYEES WELFARE LOCAL 560(84), TEAMSTERS INDUSTRIAL EMPLOYEES, Defendant: MATTHEW G. CONNAUGHTON, COHEN, LEDER, MONTALBANO & GROSSMAN, L.L.C., KENILWORTH, NJ.

**JUDGES:** STANLEY R. CHESLER, United States District Judge.

**OPINION BY:** STANLEY R. CHESLER

**OPINION**

**CHESLER,** District Judge

This matter comes before the Court on the motion to dismiss filed by Defendant Teamsters Industrial Employees Welfare Fund ("Defendant" or "Fund") [docket entry no. 3]. Plaintiff Diana Cornejo ("Plaintiff") filed no opposition to the motion. The Court has considered the papers submitted by the parties and opts to rule on the motion without oral argument, pursuant to *Federal Rule of Civil Procedure 78*. For the reasons discussed below, the Court will grant Defendant's motion to dismiss.

**I. BACKGROUND**

Plaintiff initiated this action against the Fund, and Horizon Blue Cross/Blue Shield of New Jersey ("Horizon"), to recover payment for certain outstanding medi-

cal bills. On June 5, 2009, Plaintiff was the victim of a hit and run accident in Elizabeth, New Jersey. Plaintiff was hospitalized for several days, and suffered a fractured hip. At the time of the   [*2] accident, Plaintiff had automobile insurance coverage with Progressive Garden State Insurance Company, which included a Person Injury Protection ("PIP") policy, with a limit of $15,000. Plaintiff also had insurance coverage through the Fund, for which Horizon was the third-party administrator. [1] Plaintiff's medical bills resulting from the accident exceeded the $15,000 PIP policy limits by $18,228.23, and Plaintiff submitted these outstanding bills to Horizon for payment through the secondary coverage provided by the Fund's Plan. However, Plaintiff's claim for benefits was denied. Although the Complaint sets forth no specific legal cause of action, the Court construes Plaintiff's claim as one to recover benefits due under the terms of an employer-sponsored benefits plan, arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), *Section 502(a)(1)(B)*, codified at *29 U.S.C. § 1132(a)(1)(B)*. [2] *See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)* (holding that *Section 502(a) of ERISA* completely preempts any state causes of action for benefits under an employer-sponsored benefits plan, such that it converts an "ordinary state common   [*3] law complaint into one stating a federal complaint for purposes of the well-pleaded complaint rule."). The Fund now moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff has not opposed the motion.

1    Defendant correctly notes that, although Plaintiff describes Horizon as her health insurance provider, the attached Plan Document and

Summary Description indicates that the Fund is the provider, and that Horizon is one of the benefits administrators. (Compl., ¶ 5, Ex. 2, at 100-101.)

2   This subsection creates a private right of action for a participant or beneficiary of an employee benefits plan "to recover benefits due to him under the terms of such plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

## II. DISCUSSION

### A. Legal Standard

The Court must review this motion pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, which provides for dismissal of a claim for failure to state a claim upon which relief may be granted. *Federal Rule of Civil Procedure 8(a)* requires that to state a claim for relief, a pleading contain "a short and plain statement of the claim showing  [*4] that the pleader is entitled to relief." *FED. R. CIV. P. 8(a)(2)*. When evaluating the sufficiency of claims subject to the pleading requirements of *Rule 8(a)*, the Court must apply the plausibility standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* and *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)*. In *Twombly* and *Iqbal*, the Supreme Court stressed that a complaint will survive a motion under *Rule 12(b)(6)* only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal, 129 S.Ct. at 1949* (quoting *Twombly, 550 U.S. at 570*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly, 550 U.S. at 556*.) The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement." *Id. at 1949-50*; *Twombly, 550 U.S. at 555-57*. While the complaint need not demonstrate that a defendant  [*5] is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do. *Iqbal, 129 S.Ct. at 1949*; *Twombly, 550 U.S. at 557*. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)* (quoting *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*); *see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)* (relying on *Twombly* to

hold that to survive a motion to dismiss a Complaint must assert "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element").

In evaluating a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record. *Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007)*; *Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003)*.

### B. Analysis

The Fund argues that Plaintiff fails  [*6] to state a claim for benefits under the Plan, because she failed to fulfill the Plan requirements for PIP coverage, as set forth in the Plan Description. In the alternative, the Fund argues that Plaintiff's claim must be dismissed for failure to exhaust the available administrative remedies.

### 1. Plan Coverage

Plaintiff's employee benefits under the Plan are set forth in the Plan Document and Summary Plan Description, appended as Exhibit 2 to Plaintiff's Complaint. Section 9.08 therein, titled "Liability in an Auto Accident," provides:

> If you live in a state with no-fault auto insurance (PIP), such as New Jersey, your car insurance is the primary plan for medical expenses relating to an automobile accident. You need to buy the maximum coverage offered with PIP. This Plan is secondary to PIP but only if you exceed the PIP maximum coverage limits.
>
> This Plan does not permit participants to opt out of no-fault auto insurance as the primary plan. If you should opt out, be aware that this Plan will reimburse you as the secondary plan only under the assumption that you have received primary reimbursement from your auto insurance to the maximum limit available. In other words, you will receive little  [*7] or no reimbursement from this Plan . . . unless the accident expenses exceed the PIP maximum.

Therefore, in order to be eligible for secondary reimbursement for automobile-accident related medical costs, a Plan participant: (1) must have maximum PIP coverage, and (2) must have exceeded that coverage limit.

2012 U.S. Dist. LEXIS 28654, *

Here, Plaintiff avers that she had obtained PIP coverage with a policy limit of $15,000. (Compl., ¶ 2.) Following the July, 2009 car accident, Plaintiff's medical bills exhausted the $15,000 limit, so she sought reimbursement of the outstanding $18,228.23 from the Plan. However, as the Fund correctly points out, the Complaint does not allege that $15,000 was the *maximum* PIP coverage available. Plaintiff having failed to allege compliance with the requirement that she obtain the maximum PIP coverage offered, she fails to allege her eligibility for secondary reimbursement for automobile-accident related medical costs under the Plan. Thus, Plaintiff fails to state a plausible claim for relief under *Section 502(a)(1)(B) of ERISA.*

### 2. Exhaustion of Administrative Remedies

Before a participant in an employee benefits plan may bring a *Section 502(a)(1)(B)* action, she must first exhaust the remedies [*8] available under the Plan. *Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249 (3d Cir. 2002).* Here, Section 9.09 of the Fund's Plan Document and Summary Description sets forth procedures for filing claims for benefits from the Fund. (Compl., Ex. 2, at 100-109.) The procedures include filing a claim and appeal regarding the denial of any benefits available under the Plan. *Id.* Both benefits requests and claims regarding reimbursement for hospital expenses must be submitted to Horizon, the administrator of such claims. *Id.* If a claim is denied in whole or in part, the participant may ask for a review, in writing, to the Board of Trustees, within 180 days of the notice of denial. *Id.* Appeals regarding Post-Service Hospital claims may be made directly to Horizon, which also provides a second level of appeal. *Id.* The decision on appellate review of any claim is given to the participant in writing, with reasons for the determination, and, among other information, a "statement of [the] right to bring a civil action under *ERISA Section 502(a)* following an adverse benefit determination on review." *Id.* at 108-109. The Plan goes on to advise participants that they may not

commence a lawsuit [*9] to obtain benefits under the Plan:

> . . . until after you have requested a review and a final decision has been reached on review, or until the appropriate time frame described above has elapsed since you filed a request for review and you have not received a final decision or notice that an extension will be necessary to reach a final decision. The law also permits you to pursue your remedies under *section 502(a) of [ERISA]* without exhausting these appeal procedures if the Plan has failed to follow them. . . .

*Id.* at 109.

The Fund asserts that, despite these explicit Plan procedures, Plaintiff failed to lodge an appeal regarding the denial of her claim for outstanding medical expenses resulting from the June, 2009 car accident. Indeed, the Complaint does not plead that Plaintiff utilized the required appeals process set forth in the Plan. In light of Plaintiff's failure to exhaust the administrative remedies provided by the Plan, her cause of action under *Section 502(a)(1)(B) ERISA* is barred.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint shall be granted, and Plaintiff's Complaint shall be dismissed. An appropriate form of Order will be filed [*10] herewith.

/s/ Stanley R. Chesler

STANLEY R. CHESLER

United States District Judge

Dated: March 2, 2012

EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

H

United States District Court,
D. New Jersey.
Kurt H. EICHORN, et al., plaintiffs,
v.
AT & T Corp.; Lucent Techs. Inc.; Texas Pacific
Group; Ncr Corp.; The Cit Group, Inc.; and "John
Doe" Corps. 1–10, defendants.

Civ. No. 96–3587.
Nov. 22, 2005.

**ORDER**

STANLEY R. CHESLER, District Judge.

**\*1** This matter having come before the Court on a
motion by the defendant Texas Pacific Group, in
which defendants Lucent Technologies, Inc., AT & T
Corporation, and NCR Corporation join, pursuant to
Rule 56, for summary judgment against the plaintiffs
[Docket Entry Nos. 173 & 174]; and the Court having
considered the arguments set forth in the parties'
submissions; and for the reasons set forth in the
Court's Opinion issued on the date hereof,

IT IS on this 22nd day of November, 2005

ORDERED that defendants' motion for summary
judgment [Docket Entry Nos. 173 & 174] is hereby
**GRANTED;**

IT IS FURTHER ORDERED that plaintiffs'
claims for damages under ERISA Section 502 are
**DISMISSED;** and

IT IS FURTHER ORDERED that all pending
motions are hereby **TERMINATED.**

**OPINION**

This matter comes before the Court on a motion
by the defendant Texas Pacific Group ("TPG"), pur-
suant to Rule 56, for summary judgment against the
plaintiffs. [Docket Entry Nos. 173 & 174.] Defendants
Lucent Technologies, Inc. ("Lucent"), AT & T Cor-
poration ("AT & T"), and NCR Corporation ("NCR")
join in TPG's motion. In this action, plaintiffs seek
relief against the defendants under the Employees
Retirement Income Security Act ("ERISA") for al-
legedly foreclosing certain retirement benefits to
which they were entitled. Plaintiffs invoke Section
510 of ERISA, 29 U.S.C. § 1140, through its remedial
mechanisms, Section 502(a)(1)(B), 29 U.S.C. §
1132(a) (1)(B) and Section 502(a)(3), 29 U.S.C. §
1132(a)(3).[FN1] For the reasons set forth below, de-
fendants' motion is granted.

FN1. The Court will refer to these provisions
as Section 510, Section 502(a)(1)(B), and
Section 502(a)(3), respectively.

**I. FACTS**

**A. Factual Background**

This case involves AT & T's sale of a subsidiary,
Paradyne Corporation ("Paradyne"), and the effect of
that sale on the retirement benefits of the plaintiffs,
Paradyne employees.

In 1989, AT & T acquired Paradyne, a maker of
telecommunications network access products, and
operated it as a wholly-owned subsidiary. Paradyne's
employees were covered by a pension plan established
by AT & T and adopted by its affiliates (the "AT & T
Plan"). (Final Pretrial Order ("FPO") at 8, ¶ 13.)
Plaintiffs contend that the AT & T Plan allowed an
employee who left one AT & T company and, within
six months, was re-employed by another AT & T

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

company, to receive credit for all prior service and, as a vested pension plan participant, to immediately begin to accrue additional pension benefits. (*Id.*) Plaintiffs further contend that if re-employment were to occur after a break in AT & T service of more than six months, the employee would have to remain employed for an additional five years to bridge the two terms of employment for pension purposes. (*Id.*)

On October 18, 1995, AT & T announced its intent to sell Paradyne. (*Id.* at 6, ¶ 6.) Plaintiffs contend that, to make Paradyne more attractive to buyers, AT & T adopted a policy, known as the "Preliminary Net," that prohibited Paradyne employees from transferring to other jobs within the AT & T companies. (*Id.* at 6, ¶ 6.) Plaintiffs maintain that the reason for the hiring bar was AT & T's belief that one of Paradyne's most marketable assets was its skilled employees and retention of those employees was considered essential for the sale of Paradyne. (*Id.* at 8, ¶ 15–16.) Plaintiffs further contend that retaining Paradyne employees further served the defendants' interests of maintaining its viability as a supplier of telecommunications equipment to AT & T and its affiliates. (*Id.* at 7, ¶ 11–12.)

**\*2** In November of 1995, AT & T reorganized, resulting in the creation of three separate companies: AT & T, Lucent, and NCR. (FPO at 5, ¶ 6.) This reorganization is known as the "AT & T Trivestiture." As part of the AT & T Trivestiture, AT & T transferred Paradyne to Lucent. (FPO at 5, ¶ 2.) Pursuant to the Preliminary Net, Paradyne employees remained precluded from seeking employment at other AT & T companies.

TPG became interested in acquiring Paradyne from Lucent and, in April of 1996, began negotiating its purchase. (*Id.* at 6, ¶ 3; 8, ¶ 14.) Negotiations culminated in the June 18, 1996 Purchase Agreement between TPG and Lucent. (*Id.* at 8, ¶ 14.) The Purchase Agreement included a further hiring restriction that prohibited AT & T, Lucent, and their respective

affiliates from hiring anyone who had been employed at Paradyne since June 1, 1996 and whose compensation was greater than $50,000. (*Id.* at 8, ¶ 16; Certification of David Michael Fabian ("Fabian Cert."), Ex. A at ¶ 4.5 therein.) This prohibition is referred to as the "Pre–Closing Net." On June 19, 1996, Paradyne employees were advised of the sale and, further, that their retirement benefits under the AT & T Plan would be discontinued. (FPO at 8, ¶ 16.) In effect, the Pre–Closing Net extended the prohibition on Paradyne employees' ability to transfer employment to AT & T affiliates.

The Paradyne deal closed on July 31, 1996. (*Id.* at 8, ¶ 14 .) At the closing, parties to the transfer executed the "Employee Matters Agreement," which extended the Pre–Closing Net for eight months after the closing. (*Id.* at 8, ¶ 18.) Plaintiffs claim that the Preliminary Net, the Pre–Closing Net, and the Employee Matters Agreement (collectively the "Nets") guaranteed that they could not enjoy the AT & T Plan's benefit of bridging their accrued retirement credit by becoming re-employed by another AT & T company within six months. (*Id.* at 8, ¶ 25.) Plaintiffs claim that this interfered with accrual of their retirement benefits solely for the purpose of increasing the defendants' profits. (*Id.* at 8, ¶ 19.)

**B. Procedural History**

As a result of these events, plaintiffs filed a number of cases that resulted in the instant consolidated matter, *Eichorn v. AT & T Corp.,* 96–3587 (hereinafter *"Eichorn"* ). [FN2] Plaintiffs alleged that the Nets violated Section 1 of the Sherman Act and had the effect of "interfering with the attainment of" certain rights with respect to plaintiffs' benefits in violation of ERISA Section 510. [Docket Entry No. 1.] Only the ERISA claims remain.

FN2. *Eichorn* was filed on July 24, 1996 by a putative class action of Paradyne employees against AT & T, Lucent, and TPG. The second action, *Daly v. AT & T Corp.,*

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

96–4674(MLC) (hereinafter *"Daly"* ), was filed on October 3, 1996 and, on November 20, 1996, was consolidated with *Eichorn.* By order dated March 29, 1999, the Honorable Mary L. Cooper granted summary judgment to the defendants in those actions dismissing plaintiffs' antitrust claims. [Docket Entry No. 42.] By order dated August 23, 1999, Judge Cooper denied plaintiffs' application for class discovery and dismissed plaintiffs' ERISA claims. [Docket Entry No. 48.] Plaintiffs appealed Judge Cooper's decisions.

While Eichorn was on appeal, plaintiffs' counsel filed *Lawless v. AT & T Corp.,* 00–0081 (hereinafter *"Lawless"* ) and *Brugner v. AT & T Corp.,* 00–3008 (hereinafter *"Brugner"* ). The claims in *Lawless* and *Brugner* arose from the same facts as *Eichorn* and differed only insofar as they were not putative class actions, and they named NCR and CIT as defendants.

The Court of Appeals for the Third Circuit affirmed Judge Cooper's decision with respect to plaintiffs' antitrust claims, but reversed her ruling with respect to the ERISA claims. *Eichorn v. AT & T Corp.,* 248 F.3d 131, 150 (3d Cir.2001) (holding "plaintiffs have presented sufficient circumstantial evidence of intent to interfere with their pension rights to create a genuine issue of material fact."). The Court of Appeals for the Third Circuit did not address whether or not the relief that plaintiffs sought was recoverable under Section 502 of ERISA. For this reason, the instant motion does not seek to overturn what is now law of the case, as plaintiffs argue. (*See* Pl.'s Br. at 2–3.)

Accordingly, plaintiffs' ERISA claims were remanded to this Court with the di-

rection that the District Court address plaintiffs' motion for class discovery. *Eichorn,* 248 F.3d at 150. On August 28, 2001, *Lawless* and *Brugner* were consolidated with *Eichorn.* [Docket Entry No. 66.] The case was reassigned to the Undersigned on December 20, 2002. [Docket Entry No. 95.]

On December 12, 2003, TPG filed a motion to strike testimony and related calculations of plaintiffs' damages witness, Stephen A. Crowley, and to enter summary judgment in defendants' favor. [Docket Entry No. 149.] On August 18, 2004, the Court granted defendants' motion to strike plaintiffs' damages witness and requested supplemental briefing on whether or not plaintiffs should be permitted to make additional damages submissions. [Docket Entry No. 156.] On November 10, 2004, after supplemental briefing, the Court entered an Order that (1) barred plaintiffs from submitting Mr. Crowley's calculations, reports, and testimony; (2) denied plaintiffs leave to add expert witnesses or submit calculations, reports, or testimony of such witnesses; (3) denied defendants' motion for summary judgment; (4) expressly reserved on the issue of "whether plaintiffs can quantify or establish any right to 'back pay' and/or equitable relief increasing plaintiff's pension benefits"; and (5) directed the parties to confer with Magistrate Judge Hughes to schedule discovery on remaining damages issues. [Docket Entry No. 163.]

**\*3** Defendants filed the instant motion on May 19, 2005. [Docket Entry Nos. 173 & 174.] In their motion, the defendants generally argue that ERISA Section 502(a) does not allow recovery for plaintiffs' claims. (*See* Def.'s Br. at 4–13.) Defendants argue that plaintiffs' only possible theories of recovery are under Sections 502(a)(1)(B) and Section 502(a)(3). (*Id.* at 5–7.) Defendants argue plaintiffs cannot recover under Sections 502(a) (1)(B) because they allege that the defendants interfered with their ability to obtain rights under the AT & T Plan, not the breach of the Plan

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

provision, which is the sole conduct for which that section provides a remedy. (*Id.* at 7.) Defendants further argue the compensatory damages that plaintiffs seek are not "appropriate equitable relief" under Sections 502(a)(3). To address these arguments, the Court must analyze the alleged conduct at issue and the nature of plaintiffs' claimed damages.

**C. Defendants' Alleged Conduct**

Plaintiffs do not seek recovery for a breach of the AT & T Plan, but for interference with benefits to which they would have been entitled had they remained subject to the AT & T Plan. Specifically, plaintiffs claim that the purpose of the Nets was to "thwart the predictable efforts of Paradyne employees to find employment with other units of the former AT & T organization, thereby preventing them from remaining as vested participants in an ongoing pension plan with the right to add more service time to their existing pension credits." (FPO at 9, ¶ 22.) Plaintiffs claim that the Nets had the effect of "preventing the Paradyne workers from attaining or enjoying the benefits of the pension-bridging provisions to which they are entitled as pension plan participants." (*Id.* at 13, ¶ 46.) In their motion papers, plaintiffs state that the Nets "impede[d] their continued participation in the AT & T/Lucent pension plan," and that "such action constituted interference with the attainment of an ERISA-protected right." (Pl.'s Br. at 2.)

**D. Plaintiffs' Alleged Damages**

On June 27, 2005, United States Magistrate Judge John J. Hughes entered the Final Pretrial Order in this case. [Docket Entry No. 194.] Item 6.B.<u>FN3</u> of the Final Pretrial Order states that plaintiffs will call 25 former Paradyne employees and "[a]ll such testimony will correspond closely to information provided in depositions and responses to written discovery requests, the answers to interrogatories propounded by defendants ... near the end of 2004 in particular." (*Id.* at 30.) The answers to interrogatories to which plaintiffs refer are attached to Mr. Fabian's certification as Exhibits H through DD. The relevant interrogatory, number 5,

asked plaintiffs to "[i]dentify all damages you claim as a result of the allegations contained in the Complaint, which have not been precluded by the Court's November 10, 2004 Order and set forth fully and comprehensively the method of computation used to reach the damage figures." (*See, e.g.,* Fabian Cert., Ex. H at 5.) Plaintiffs' interrogatory answers reflect calculations, pursuant to various formulae <u>FN4</u>, of money they would have received but for the defendants' alleged interference. By way of example, in her March 20, 2005 response to the damages interrogatories, plaintiff Judith B. Brugner set forth the calculation by which she claimed that her damages amount to $298,252.57. (*Id.,* Ex. H at 6–7.) Ms. Brunger stated:

> <u>FN3.</u> Part 4.B. of the Final Pretrial Order requires plaintiffs to list each contested fact they intend to prove with respect to damages, including "each item of damages, the amount of each item, [and] the factual basis for each item ...." (FPO at 13, Part 4.B.) In response to this, plaintiffs state "the factual showing as regards to damages is set forth in Section 6.B. below." (*Id.*)

> <u>FN4.</u> The calculations involve an application of different formulae that the plaintiffs claim apply to the AT & T Plan, including the "Transition Formula" (*see* Fabian Cert., Ex. H at 5–7; Ex. I at 4–6; Ex. Q at 4–7; and Ex. R at 5–7), the "Lucent Retirement Income Plan Service Program Summary Plan Description effective 1/1/2000, updated 11/20/2000" (*see id.,* Ex. J at 15–16; Ex. K at 5; Ex. L at 5–6; Ex. M at 4–5; Ex. P at 6–9; Ex. U at 6–8; Ex. W at 5–6; and Ex. Y at 4–7), and the like (*see id.,* Ex. N at 4–5; Ex. O at 4–5; Ex. S at 4–6; Ex. T at 4–6; Ex V at 4–7; Ex. X at 5–7; Ex. Z at 5–7; Ex. AA at 4–6; Ex. BB at 4–5; and Ex. CC at 5–7.). The details of these formulae are not relevant to this opinion.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

**\*4** I base these damage calculations on taking retirement on January 15, 2000 after reaching 20 years' service to qualify for an unreduced service pension under the Transition Benefit Formula which is applicable to employees who became eligible for retirement during the period from January 1, 1997 to December 31, 2000, and is based on earnings from 1991 through 1996.

(*Id.,* Ex. H at 6–7.) After applying the proposed formula, Ms. Brunger concluded:

The combination of the accrued pension payments with interest thereon that I should have received through April 30, 2005 ($128,290 .35) plus my additional damages for lost pension benefits subsequent to that date as determined by the cost of an annuity ($169,962.22) results in total damages of $229,252.57.

(*Id.,* Ex. H at 7.) The interrogatory responses do not state that the plaintiffs seek equitable relief, but rather frame the plaintiffs' damages solely in terms of a monetary amount.

Plaintiffs' legal theories, referred to in part 13 of the Final Pretrial Order, preserved the following legal issues:

3. Should Lucent and/or AT & T be compelled in the exercise of the Court's equitable jurisdiction to adjust plaintiffs' existing pension rights by crediting them with the service time they failed to accrue as a result of the no-hire agreement?

4. Have plaintiffs correctly calculated the monetary values of the pension benefits lost through interference with their ability to continue holding pension-bearing employment up to the present time, or such sooner time as would have qualified them to receive pension benefits?

(FPO at 86.) While issue 3 mentions the "Court's

equitable jurisdiction," it does not reference the equitable remedy sought, such as specific performance, injunction, or an equitable lien.

Plaintiffs' opposition to the instant motion introduces the concept of an "equitable decree" but does not elucidate the remedy they seek. With respect to Section 502(a)(1)(B), plaintiffs argue that their recovery:

involves no more than the simple task of determining what amount of pension service time plaintiffs lost through violation of § 510, adding that service time to the time already recorded for their former service, and recalculating their pension benefits *mutatis mutandis*[FN5] under the plan formula. It is a process that can easily be viewed as an illustration of the maxim that equity regards as done what ought to be done.

> FN5. *Mutatis Mutandis* means "[a]ll the necessary changes having been made; with the necessary changes." Black's Law Dictionary 832 (7th ed.2000).

(Opp. Br. at 5) (citations and internal quotation marks omitted, footnote added). With regard to Section 502(a)(3), plaintiffs argue they seek "pay only in the sense that pensions were part of their total compensation, and a decree which remedies the denial of their right to continue earning pension credits up to the present time will serve essentially the same purpose as a conventional back pay award." (Pl.'s Br. at 15.) Plaintiffs further argue "any award for sums adjudged due as 'back pay' pension benefits will necessarily be ancillary to an equitable decree crediting plaintiffs with the additional service." (*Id.* at 16.)

## III. DISCUSSION

### A. Summary Judgement Standard

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

**\*5** Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir.1989); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.1987). An issue is "genuine" if a reasonable factfinder could possibly hold in the nonmovant's favor with regard to that issue. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248. At the summary judgment stage, a court may not weigh the evidence or make credibility findings; "these tasks are left for the fact-finder." *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.,* 998 F.2d 1224, 1230 (3d Cir.1993). Therefore, to raise a genuine issue of material fact, " 'the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Id.; see also* Anderson, 477 U.S. at 252 (holding "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."). In short, summary judgment is proper in the event that, even taking all factual disputes in a light most favorable to the plaintiff, relief could not be granted.

**B. Plaintiffs' ERISA Claim**

Plaintiffs' claims are grounded in Section 510 of ERISA, 29 U.S.C. § 1140. Section 510 provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of

interfering with the attainment of any right to which such participant may become entitled under the plan ....

Section 502 is the civil enforcement provision of ERISA and provides certain remedies for the breach of ERISA sections such as 510. 29 U.S.C.A. § 1132. Section 502 provides that a civil action may be brought:

> (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan;

> (2) by the Secretary, or by a participant beneficiary or fiduciary for appropriate relief under section [409 of ERISA]; [and]

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of the subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan.

**\*6** 29 U.S.C. § 1132. Plaintiffs seek recovery under Section 502(a)(1)(B) and Section 502(a)(3).

**1. ERISA Section 502(a)(1)(B),**

Defendants argue that Section 502(a)(1)(B) does not provide a remedy for plaintiffs' Section 510 claims because plaintiffs claim the Nets interfered with their ability to accrue benefits under the AT & T Plan, rather than a breach of the AT & T Plan itself. (Def.'s Br. at 7.) In opposition, plaintiffs argue that both legal and equitable relief, namely the recovery of pension benefits, enforcement of plan rights, and clarification of future benefits, are recoverable under Section 502(a)(1)(B). (Pl.'s Opp. Br. at 3–8.) For the following reasons, the Court holds that plaintiffs cannot recover under Section 502(a)(1)(B) as a matter of law.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

Section 510 "is not concerned with whether a defendant complied with the contractual terms of an employee benefit plan. Rather, the emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1133 (7th Cir.1992). In this regard, the Court of Appeals for the Seventh Circuit has stated:

> In order to enforce the terms of a plan under Section 502, the participant must first qualify for the benefits provided in that plan. *See* 29 U.S.C. § 1132. Rather than concerning itself with these qualifications, one of the actions which Section 510 makes unlawful is the interference with a participant's ability to meet these qualifications in the first instance.

*Id.* at 1134 (citations omitted). Therefore, Section 510 is aimed at prohibiting interference with the rights of plan beneficiaries. Section 502(a)(1)(B), on the other hand, provides a remedy for the assertion of a contract right under an employee benefit plan. *Id.* at 1133. Thus, a violation of Section 510 (prohibition of *interference with the attainment of a right* to which a participant "may become entitled under a plan") is inconsistent with the remedy provided under Section 502(a)(1)(B) (recovery of benefits *"due ... under the terms of his plan"* ).

The United States District Court for the Eastern District of New York drew the same distinction in *Russell v. Northrop Grumman Corp .,* 921 F.Supp. 143, 150 (E.D.N.Y.1996). In *Russell,* the plaintiff sued his employer when he was fired just months shy of his twentieth anniversary with the company, at which time he would have been entitled to 65% of his pension once he reached age 50. *Id.* at 146. Plaintiff al-

leged that defendant terminated his employment to interfere with his rights under the pension plan. *Id.* In dismissing plaintiff's claims under ERISA Section 502(a)(1)(B), the *Russell* court noted that alleged violations of Section 502(a)(1)(B) "must be of the *terms* of the plan to be actionable." *Id.* at 150 (emphasis in original) (citations omitted). Accordingly, the District Court held that the plaintiff could not recover under Section 510, through Section 502(a)(1)(B), because he sought redress for interference with the *entitlement* to benefits for which he had not yet qualified, and not *breach* of a term of the plan. *Id.*

*7 Defendants' alleged conduct here cannot form the basis for recovery under Section 502(a)(1)(B). As in *Russell,* plaintiffs do not claim entitlement to relief already owed to them under the Plan, but from interference with their ability to obtain benefits. Specifically, plaintiffs claim that the Nets "impede[d] their continued participation in the AT & T/Lucent pension plan," and that "such action constituted interference with the attainment of an ERISA-protected right." (Pl.'s Br. at 2.) Plaintiffs' attempt to recover money to which they would have been entitled but for the Paradyne transfer appears to be the very remedy that the *Russell* court held is not recoverable under Section 502(a)(1)(B). For the reasons stated in that case, therefore, the Court holds that plaintiffs cannot recover under Section 502(a)(1)(B) for a breach of Section 510.

Plaintiffs argue that *Varity Corporation v. Howe,* 516 U.S. 489 (1996) supports their claim under Section 502(a)(1)(B). *Varity* held, in part, that plaintiffs who claimed a breach of fiduciary duty under Section 409 of ERISA could not proceed under Section 502(a)(1)(B) "because they were no longer members of the ... plan and, therefore, had no 'benefits due [them] under the terms of [the] plan.' " 516 U.S. at 515. Plaintiffs argue this is a tacit recognition that, had the plaintiffs in *Varity* been members of the plan, as plaintiffs in this case are, they could have proceeded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

under Section 502(a)(1)(B). (Pl. Br. at 7–8.) The majority in *Varity*, however, did not hold that a plaintiff alleging a violation of 510 can proceed under Section 502(a)(1)(B) if they were plan participants, nor did the court address the propriety of extra-contractual damages under Section 502(a)(1)(B). Notably, the dissent in *Varity*, citing prior Supreme Court precedent, stated as follows:

> Section 502(a) (1)(B) deals exclusively with contractual rights under the plan. It allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." As we recognized in *Russell*, this provision "says nothing about the recovery of extracontractual damages."

516 U.S. at 521 n.2 (Thomas, J., dissenting) (citing *Mass. Mut. Life Ins. v. Russell,* 473 U.S. 134, 144 (1985)). Accordingly, this Court's previous analysis applies to plaintiffs' argument under *Varity*. Because plaintiffs seek damages for interference with their rights, not breach of obligations under the AT & T Plan, Section 502(a)(1)(B) does not offer them a remedy. The Court does not read *Varity* to contradict this proposition.

**2. ERISA Section 502(a)(3)**

Unlike the Court's analysis with respect to Section 502(a)(1) (B), the issue whether or not plaintiffs may proceed under Section 502(a)(3) requires the Court to focus on the *type* of damages sought.

**\*8** Defendants characterize plaintiffs' alleged damages as "back pay ." As such, they argue, plaintiffs' damages are remedies at law and, therefore, not recoverable under Section 502(a)(3), which allows only "appropriate equitable relief." (Def.'s Br. at 8–13.) Plaintiffs argue they are seeking back pay "only in the sense that pensions were part of their total

compensation, and a decree which remedies the denial of their right to continue earning pension credits up to the present time will serve essentially the same purpose as a conventional back pay award." (Pl.'s Br. at 15.) For the reasons that follow, the Court holds that the relief plaintiffs seek is not "appropriate *equitable* relief" under Section 502(a)(3).

As stated previously, ERISA Section 502(a)(3) allows recovery "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan." 29 U.S.C. § 1132. Thus, recovery under Section 502(a)(3) is limited to equitable relief. "Equitable relief" under Section 502(a)(3) means "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 257 (1993). The present motion requires the Court to determine whether or not the relief that plaintiffs seek is "equitable" in nature and, therefore, recoverable under this section.

It is undeniable that plaintiffs seek money they claim is due as a result of the defendants' alleged wrongdoing. Generally, such a recovery can only proceed under Section 502(a)(3) where (1) the damages are restitutionary in nature; or (2) where the back pay is incidental to a form of injunctive relief, such as reinstatement. *Russell,* 921 F.Supp. at 153. Plaintiffs' damages are neither.

**i. Restitution**

While "restitution" is among those remedies "typically available in equity," *Mertens,* 508 U.S. at 257, not all restitution constitutes "appropriate equitable relief" under Section 502(a)(3). In *Great–West Life & Annuity Ins. Co. v. Knudson,* 524 U.S. 204 (2002) the Supreme Court distinguished between equitable restitution, which is recoverable under Section 502(a)(3), and legal restitution, which is not. In that case, the plaintiff, the insurer of an ERISA plan, sued the wife of a plan participant who was involved

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

in a car accident and recovered medical benefits from the plan. 534 U.S. at 207. Plaintiff sought recovery under the reimbursement provision of the plan, for amounts the defendant recovered from a third-party in a tort action. *Id.* at 207–08. Plaintiff argued the damages it sought were "equitable" under *Mertens* and, therefore, recoverable under Section 502(a) (3). *Id.* at 210. In rejecting Great–West's argument, the court reasoned as follows:

> In cases in which the plaintiff "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit. 1 Dobbs § 4.2(1), at 571. *See also* Muir, *supra,* at 37. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Restatement of Restitution § 160, Comment *a,* pp. 641–642 (1936). Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

> **\*9** In contrast, a plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. *See* 1 Dobbs § 4.3(1), at 587–588; Restatement of Restitution, *supra,* § 160, Comment *a,* at 641–642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3 .7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains,

[the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, *supra,* § 215, Comment *a,* at 867. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Great–West,* 534 U.S. at 213–14 (emphasis in original). With this standard in mind, the Court turns to plaintiffs' alleged damages.

Plaintiffs have expressly abandoned any claim to restitution. In their opposition brief, plaintiffs state that they "have no need for a theory of recovery grounded on 'restitution.' " because they seek "relief from conduct in violation not of a private contract but ERISA itself ...." (Pl.'s Br. at 15.) Accordingly, the Court need not reach the issue of whether or not plaintiffs' purported damages are the sort of restitution typically available in equity.

Had it reached the issue, however, the Court would hold that the relief that plaintiffs seek is not equitable in nature and, therefore, not recoverable under Section 502(a)(3). As a general matter, the forced transfer of funds from the defendants to the plaintiffs "would not be a viable remedy because '[a]lmost invariably ... suits seeking ... to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty.' " *Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 445 (S.D.N.Y.2002). Plaintiffs do not seek recovery of money to which they are entitled, but rather recovery of benefits to which they would have been entitled had defendants not interfered with their rights. For example, in their Final Pretrial Order, plaintiffs preserve as a legal issue whether or not they have correctly calculated the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

monetary value of lost benefits due to defendants' "interference with their ability to continue holding pension-bearing employment up to the present time, or such sooner time as would have qualified them to receive pension benefits." (FPO at 86.) Moreover, in their Opposition Brief, plaintiffs claim that the Nets "impede[d] their continued participation in the AT & T/Lucent pension plan," and that "such action constituted interference with the attainment of an ERISA-protected right." (Pl .'s Br. at 2.) Thus, their recovery is not for the turn-over of a thing to which they are entitled, it is for the award of money damages. This theory falls squarely within what the *Great–West* court held to be "restitution at law," 534 U.S. at 213, which is not recoverable under Section 502(a)(3).[FN6]

> FN6. Nor have the plaintiffs argued that the remedy they seek amounts to an equitable lien or constructive trust. *See, e.g., Great–West,* 534 U.S. at 213 (holding restitution in equity is recoverable under Section 502(a)(3) "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."). Thus, the Court need not decide whether or not the plaintiffs' alleged damages are sufficiently traceable to funds within the defendants' possession. *Compare Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 214 (3d Cir.2004) (holding plaintiffs sufficiently identified the interest of wrongfully withheld funds so as to render it "readily traceable" under *Great–West* ); *with Horvath v. Keystone Health Plan East,* 333 F.3d 450, 457 n.3 (3d Cir.2003) (noting "there are no funds readily traceable to [plaintiff] over which a constructive trust or other equitable remedy may be imposed.").

**ii. Incidental to Equitable Relief**

**\*10** Plaintiffs argue that damages are recoverable under Section 502(a)(3) because they are an integral part of an equitable remedy. (Opp. Br. at 16.) Plaintiffs state this differently by arguing "any award for sums adjudged due as 'back pay' pension benefits will necessarily by ancillary to an equitable decree crediting plaintiffs with the additional service." (*Id.*) Defendants argue that plaintiffs' recasting their damages as the recovery of lost benefits still constitutes the type of compensatory relief that is not recoverable under Section 502(a)(3). (Reply Br. at 10.)[FN7]

> FN7. Defendants also argue that plaintiffs are "barred by the Court's Order of November 10, 2004" from "recharacteriz[ing] their damages as lost pension benefits." (Reply Br. at 10.) The Court's November 10, 2004 Order, however, reserved on the issue of "whether plaintiffs can quantify or establish *any right to 'back pay' and/or equitable relief* increasing plaintiff's pension benefits." [Docket Entry No. 163] (emphasis added). It appears, therefore, plaintiffs are not barred from at least arguing their damages are equitable in nature.

Plaintiffs rely on footnote 4 in the *Great–West* decision. In that footnote, the majority rejected Justice Ginsburg's dissenting argument that Congress has treated back pay as a type of restitution and, therefore, "equitable" for the purpose of Title VII of the Civil Rights Act of 1964. 534 U.S. at 218 n.4; *see also Strom v. Goldman Sacks & Co.,* 202 F.3d 138, 143–150 (2d Cir.1999) (holding the recovery of life insurance proceeds that the plaintiff would have received but for defendants' breach of fiduciary duty, as with the National Labor Relations Act and Title VII, was a form of "equitable relief" under Section 502(a)(3)). For this assertion, the dissent cited *Curtis v. Loether,* 415 U.S. 189, 197 (1974) and *Teamsters v. Terry,* 494 U.S. 558, 572 (1990). The court reconciled this authority by stating, first, that "these cases do *not* say that *since* [the remedy sought] is restitutionary, it

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

is *therefore* equitable." 534 U.S. at 218 n.4 (emphasis in original). The majority further noted that Congress had treated back pay as equitable relief in Title VII cases only in the narrow sense that it allowed back pay to be awarded "together with equitable relief." 534 U.S. at 218 n.4. (quoting 42 U.S.C. § 2000e–5(g)(1), which expressly permits a court to order "affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate."). The majority stated this language can only be "understood to mean that Title VII backpay was 'specifically' made part of an equitable remedy." *Id.* The majority concluded that the remedy sought by Great–West—namely the re-imbursement of medical benefits in the amount the beneficiary's tort recovery from a third-party—was "a freestanding claim for money damages" and "Title VII has nothing to do with the case." *Id.*[FN8]

> FN8. In *Kishter v. Principal Life Insurance Co.,* the United States District Court for the Southern District of New York recognized that "the Second Circuit's reasoning in *Strom* has been superseded by *Great–West* ...." 186 F.Supp.2d at 445.

First, the plaintiffs have not preserved their right to the "equitable decree" that they now purport to seek. Rather, with respect to damages, plaintiffs stated they will call 25 former Paradyne employees whose testimony "will correspond closely to information provided in depositions and responses to written discovery requests, the answers to interrogatories propounded by defendants ... near the end of 2004 in particular." (*Id.* at 30.) The interrogatory responses to which the Final Pretrial Order refers reflect compensatory damages in the amount that plaintiffs claim they have lost because of defendants' conduct. (*See, e.g.,* Fabian Cert., Ex. H at 6–7.) The responses do not state that the plaintiffs seek equitable relief, but rather frame their damages solely in terms of a monetary amount. In *Mertens,* the Supreme Court excluded such

compensatory damages from those recoverable as "appropriate equitable relief" under Section 503(a)(3). 508 U.S. at 257 (holding "equitable relief" under Section 502(a)(3) is limited to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, *but not compensatory damages* )." (emphasis added)); *see also Kishter,* 186 F.Supp.2d at 438.

**\*11** Second, even if plaintiffs preserved their right to appropriate equitable relief under Section 502(a)(3), footnote 4 of the *Great–West* opinion does not support their claim. Indeed, the majority stated that the dissent's argument by analogy could only be given credence if Title VII expressly included back pay as equitable relief as a matter of statute. 534 U.S. at 218 n.4. Contrary to 42 U.S.C. § 2000e–5(g)(1), Section 502(a)(3) makes no mention of "back pay" and certainly does not specifically make it part of an equitable remedy. Plaintiffs cite no other legal authority for their argument that their claim to back pay and benefits are recoverable under Section 502(a)(3) because they are ancillary to an equitable decree. Indeed, the weight of legal authority would prohibit plaintiffs from recovering the damages they seek. *See Nicolau v. Horizon Media, Ins.,* No. 01 CIV. 0785, 2003 WL 22208356, at \*3 (S.D.N.Y Sept. 23, 2003) (dismissing plaintiffs' claim for lost wages and other money damages, where plaintiffs did not seek reinstatement or any other form of equitable relief, "[b]ecause neither lost wages nor other money damages constitute an equitable remedy ...."), *reh'g granted* 2003 WL 22852680 (S.D .N.Y. Oct. 15, 2003), *rev'd on other grounds,* 402 F.3d 325 (2d Cir.2005); *Pace v. Matsushita Elec. Corp. of America,* 257 F.Supp.2d 543, 563 (E.D.N.Y.2003) (holding the Great–West decision abrogated *Strom's* " 'make-whole' remedial scheme."); *Bona v. Barasch,* No. 01–civ–2289, 2003 WL 1395932, at \*12 (S.D.N.Y. March 20, 2003) (holding since the plaintiffs' "claim for monetary relief is nothing more than a claim for money damages as compensation for losses," they were barred from recovery under Section 503(a)(3)); *Kishter,* 186 F.Supp.2d at 438. Given this

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463
**(Cite as: 2005 WL 3609003 (D.N.J.))**

authority, and the absence of authority supporting plaintiffs' recovery, the Court holds that plaintiffs' purported damages, as described in their brief and answers to interrogatories, are not recoverable under Section 502(a)(3).

Third, the plaintiffs' efforts to cloak their damages in the garb of an "equitable decree" does not advance their argument. In *Great–West,* the Supreme Court held that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." 534 U.S. at 210–11. While plaintiffs disclaim any resort to equitable relief, their purported "equitable decree" is on all fours with the type of "legal restitution" that the *Great–West* case held was not recoverable under Section 502(a)(3). Thus, plaintiffs' calling the award of back pay-type damages an equitable decree will not save their claim. *See id.* at 255 (holding "[a]lthough they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages* ..."). In short, given that the only remedies available under Section 502(a)(3) are those "typically available in equity," *Mertens,* 508 U.S. at 257, plaintiffs cannot be heard to seek the forced transfer of money.

*\*12* Finally, plaintiffs distinguish their claims from those of the plan in *Great–West* in that plaintiffs seek recovery for a violation of ERISA itself, "not of a private contract." (Pl.'s Br. at 15.) Section 503(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary ... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce *any provisions of this subchapter or terms of the plan."* 29 U.S.C. § 1132 (emphasis added). This section makes no distinction between remedies for violation of ERISA and remedies for violation of the terms of a plan. Even if plaintiffs' argument were given credence, however, they cite no legal authority for the proposition that breach of ERISA, presumably Section 510, rather than a breach of the terms of a plan, converts their alleged

damages into an "appropriate equitable remedy" under Section 502(a)(3). Therefore, the Court finds this argument unpersuasive.

**III. CONCLUSION**

For all of these reasons, the Court grants defendants' motion for summary judgment. An appropriate Order will follow.

D.N.J.,2005.
Eichorn v. AT&T Corp.
Not Reported in F.Supp.2d, 2005 WL 3609003 (D.N.J.), 36 Employee Benefits Cas. 1463

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 6

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
(Cite as: 2004 WL 1084658 (E.D.Pa.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Alan TANNENBAUM, M.D.
v.
UNUM LIFE INSURANCE CO. OF AMERICAN,
and Albert Einstein Healthcare Foundation

No. Civ.A. 03–CV–1410.
Feb. 27, 2004.
file March 4, 2003.
of last filing May 6, 2004.

Alan H. Casper, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, representing Alan Tannenbaum, (Plaintiff).

Edward J. Foley, Jr., Conshohocken, PA, Lead Attorney, Attorney to be Noticed, representing Alan Tannenbaum, (Plaintiff).

Marc A. Weinberg, Saffren and Weinberg, Jenkintown, PA, Lead Attorney, Attorney to be Noticed, representing Alan Tannenbaum, (Plaintiff).

Kirk L. Wolgemuth, Stevens & Lee, Reading, PA, Lead Attorney, Attorney to be Noticed, representing UNUM Life Insurance Company of America, (Defendant).

*MEMORANDUM & ORDER*
SURRICK, J.

**\*1** Presently before the Court is Defendant UNUM Life Insurance Company of America's ("UNUM") Motion to Dismiss Counts I, II, III, and VI of Plaintiff's Amended Complaint (Doc. No. 3.), and Plaintiff's Request to File a Sur Reply to Defendants'

Reply Brief in Support of Motion to Dismiss Counts I, II, III, and VI of Complaint (Doc. No. 6). Plaintiff's Request to File a Sur Reply is granted. For the following reasons, Defendants' Motion to Dismiss [FN1] will be granted in part and denied in part.

> FN1. While only UNUM originally moved to dismiss the amended complaint, both Defendants joined the reply brief in support of that motion. (Doc. No. 5.) We will therefore consider the motion to dismiss as if it were filed by both Defendants.

A. Background [FN2]

> FN2. Because Defendants moved to dismiss the amended complaint, we must "accept as true the facts alleged in the [amended] complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990) (citing *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988)). We will only dismiss the amended complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

Plaintiff Alan Tannenbaum, M.D., brings this action against Defendants UNUM Life Insurance Company of America and Albert Einstein Healthcare Foundation ("Einstein") for relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 28 U.S.C. § 1001, et seq., and Pennsylvania state law. Plaintiff is employed by the Einstein Community Health Associates as a pediatrician and as such became a participant in the Albert

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
**(Cite as: 2004 WL 1084658 (E.D.Pa.))**

Einstein Healthcare Foundation Plan (the "Plan"). (*Id.* ¶ 11.) The Plan is an employee welfare benefit plan established pursuant to ERISA and Plaintiff was at all relevant times a participant in the Plan. (*Id.* ¶¶ 2–3.) The Plan was created to maintain and provide disability income to employees pursuant to ERISA. (*Id.* ¶ 4.) Defendants are administrators of the Plan and fiduciaries with respect to the Plan. (*Id.* ¶¶ 5–6.) UNUM is also a disability insurance company with whom Plaintiff has contracted for two additional private disability insurance policies. (*Id.* ¶ 7.) Plaintiff generally alleges that Defendants failed to pay him certain disability benefits that he was due after a traumatic injury ended his career.

Plaintiff was injured on December 1, 2000, in a motor vehicle accident. (*Id.* ¶ 12.) As of April 1, 2001, Plaintiff could no longer perform his duties as a pediatrician and has been unable to return to work since then. (*Id.* ¶ 17.) Plaintiff contacted the Plan to apply for disability benefits on or about April 1, 2002, but was incorrectly advised by the Plan administrator that he could not apply for benefits until after the elimination period. (*Id.* ¶¶ 19–20.) Based on this false information, Plaintiff was not provided a benefit application until on or about June 6, 2002. (*Id.* ¶ 21.) At or about the same time Plaintiff completed the application and forwarded a copy to UNUM and the Plan. (*Id.* ¶ 22.) The Plan and UNUM made no effort to investigate Plaintiff's claim until August 22, 2002, more than 60 days after Plaintiff submitted his application. (*Id.* ¶ 23.) UNUM denied Plaintiff's application on October 4, 2002. (*Id.* ¶ 24.) Plaintiff alleges that this denial was without support in the record and/or relied upon evidence that had been manipulated, altered, and fabricated. (*Id.* ¶ 26.)

On November 11, 2002, Plaintiff appealed UNUM's decision and requested a copy of the documents that it used in its review. (*Id.* ¶ 27.) Plaintiff also submitted an application for Social Security Disability Benefits as required under the Plan and was awarded total disability benefits on December 17, 2002. As

required under the Plan, Plaintiff forwarded a copy of this award to UNUM. (*Id.* ¶ 29.) On January 6, 2003, more than forty-five days after Plaintiff appealed the denial of benefits, UNUM requested an additional forty-five days for review. (*Id.* ¶ 30.) On January 31, 2003, eight months after Plaintiff first applied for benefits, UNUM requested that Plaintiff undergo two medical examinations by physicians of their choosing so that UNUM could "make a more informed determination." (*Id.* ¶ 31.) On February 6, 2003, UNUM denied Plaintiff's request for the documents contained in the administrative record and upon which it relied in making its decision to deny Plaintiff benefits. (*Id.* ¶ 32.) As of the date of the amended complaint, Plaintiff still had not received a decision on his appeal to the Plan and UNUM. (*Id.* ¶ 35.)

**\*2** Plaintiff's amended complaint is divided into six counts. Counts I and III of the amended complaint primarily seek to recover the past and future disability benefits that Plaintiff claims he is due under the Plan. Count II seeks penalties for Defendants' failure to provide certain documents that Plaintiff claims he was entitled to under ERISA. Count IV asserts a state law contract claim alleging that UNUM breached the two private disability insurance policies it issued Plaintiff. Count V asserts a bad faith claim under state law. Count VI asserts a bad faith claim under ERISA. Defendants originally argued that Counts I and III should be dismissed for Plaintiff's failure to exhaust his administrative remedies. However, in their reply brief in support of their motion to dismiss, Defendants abandoned that argument. Thus, the only remaining arguments for us to consider are Defendants' motion to dismiss Counts I (on grounds other than exhaustion), II, and VI.

**B. Count I – ERISA Breach of Fiduciary Duty Claim**
ERISA's civil enforcement provision, 29 U.S.C. § 1132,<sup>FN3</sup> sets forth the kinds of actions that may be brought to remedy violations of ERISA. Count I, entitled "ERISA Breach of Fiduciary Duty," invokes one subsection of that provision, § 1132(a)(3)(B), as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
**(Cite as: 2004 WL 1084658 (E.D.Pa.))**

its basis for relief.<u>FN4</u> Section 1132(a)(3)(B) permits a participant in an ERISA plan to bring a civil action "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or *(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan.*" (emphasis added). Defendants, citing *Varity Corp. v. Howe,* 516 U.S. 489 (1996), argue that § 1132(a)(3)(B) is a catchall remedial section that may only be invoked to remedy violations of ERISA when no other provision of ERISA's civil enforcement provision applies. Defendants argue that Plaintiff may not sue to recover ERISA benefits under § 1132(a)(3)(B) because he may recover any benefits he is owed under § 1132(a)(1)(B).

> FN3. 29 U.S.C. § 1132 provides, in relevant part:

> (a) Persons empowered to bring a civil action A civil action may be brought—

> (1) by a participant or beneficiary—

> (A) for the relief provided for in subsection (c) of this section, or

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i)

to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

> FN4. Plaintiff's brief in opposition to the motion to dismiss makes clear that Count I invokes § 1132(a)(3)(B).

In Count I Plaintiff seeks, among other things, "restitution in an amount equal to the benefits he should have received from the date of [his] application and to otherwise make Plaintiff whole for the fiduciary breaches." In Count III, which invokes § 1132(a)(1)(B), Plaintiff also seeks to recover the benefits he believes he is due under the Plan. Section 1132(a)(1)(B) allows plan participants to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ." Since Plaintiff can recover any benefits he is due under § 1132(a)(1)(B), Defendant argues that Count I of the amended complaint, which seeks benefits under the catchall remedial section, must be dismissed.

In arguing for dismissal of Count I Defendants also cite *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002). They argue that Plaintiff may only obtain equitable relief under § 1132(a)(3)(B), and that following the Supreme Court's decision in *Great West,* restitution of benefits should not be considered an equitable remedy. Thus, Defendants argue that Count I of the amended complaint must be dismissed on the additional grounds that seeks relief not authorized by § 1132(a)(3)(B). We will separately address each of these arguments.

1. The impact of *Varity Corp. v. Howe*
**\*3** In *Varity Corp. v. Howe,* the Supreme Court held that a group of beneficiaries who were denied benefits under an ERISA plan could bring an individual action for breach of fiduciary duty under §

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
(Cite as: 2004 WL 1084658 (E.D.Pa.))

1132(a)(3)(B). 516 U.S. at 515. The plaintiff beneficiaries were former employees of the defendant. Soon after the defendant assigned its former employees to a new benefit plan, the new plan entered into a receivership, and the former employees lost their benefits. The former employees then sued the defendant under ERISA for breach of fiduciary duty and sought to be reinstated into their former benefit plan. The Court held that the former employees' suit was proper under § 1132(a)(3)(B), which entitles beneficiaries to seek "other appropriate equitable relief" to redress violations of ERISA. The Court stated that § 1132(a)(3)(B) was a " 'catchall' remedial section" that afforded litigants equitable relief for violations of ERISA when no other remedial section applied. Varity, 515 U.S. at 511. However, the Court cautioned that:

> [w]e should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.' ... Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'

*Id.* at 515 (citations omitted).

In *Varity,* the former employees could not obtain relief under the first two subsections of § 1132(a). They could not sue under § 1132(a)(1)(B), which is the ERISA provision that specifically allows plan participants and beneficiaries to sue to recover the benefits they are due, because, as former employees, they were not due any benefits "under the terms of [the] plan." Therefore, § 1132(a)(1)(B) did not apply. Section 1132(a)(2), which permits suits for "appropriate relief" for breaches of fiduciary duty, only allows plaintiffs to recover on behalf of the plan. Because the former employees were seeking to recover individually, § 1132(a)(2) did not apply. Thus, the

former employees had to rely on § 1132(a)(3)(B) or they would have no remedy at all. Under these circumstances, the Court allowed the former employees to invoke § 1132(a)(3)(B). However, as mentioned above, the Court cautioned that "where Congress elsewhere provided adequate relief for a beneficiary's injury," § 1132(a)(3)(B) "normally" would not apply. *Varity,* 515 U.S. at 515.

The courts of appeals are split over whether *Varity* ever permits a plaintiff who has been denied benefits to simultaneously bring an action for benefits under § 1132(a)(1)(B) and an action for breach of fiduciary duty under § 1132(a)(3)(B). *Compare, e.g., Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1088–89 (11th Cir.1999) (holding that a plaintiff with a right to bring a claim for benefits under § 1132(a)(1)(B) cannot bring an action under § 1132(a)(3)(B)); *Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 639 (5th Cir.1999) (same); *Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir.1996) (same); *with Larocca v. Borden, Inc.,* 276 F.3d 22, 28 (1st Cir.2002) (affirming district court's decision to constructively reinstate plaintiffs to benefit plan under § 1132(a)(3)(B), and then award plaintiffs benefits under § 1132(a)(1)(B)); *Devlin v. Empire Blue Cross & Blue Shield,* 274 F .3d 76, 89–90 (2d Cir.2001) (holding that *Varity* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available; instead, in such situations the district court may only award such equitable relief as it considers appropriate). Defendants assert that this issue was resolved in the Third Circuit in *Ream v. Frey,* 107 F.3d 147, 152–53 (3d Cir.1997). We disagree. The plaintiff in *Ream* was in a situation similar to that of the plaintiffs in *Varity,* in that he was seeking lost benefits but had no cause of action against the defendant under § 1132(a)(1)(B). The court, relying on *Varity,* held that the plaintiff was entitled to pursue a private breach of fiduciary duty claim against the defendant under § 1132(a)(3)(B), the catchall remedial section. In dicta the court stated that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
(Cite as: 2004 WL 1084658 (E.D.Pa.))

"[w]here Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be ed." *Ream,* 107 F.3d at 152. The court did not decide whether a plaintiff who has been denied benefits can, at the pleading stage, maintain an action for benefits under § 1132(a)(1)(B) and an action for "other appropriate equitable relief" under § 1132(a)(3)(B). That is the question before this Court.

**\*4** The district courts within this circuit are split over the issue presently before us. *Compare, e.g., Doyle v. Nationwide Ins. Cos. & Affiliates Employee Health Care Plan,* 240 F.Supp.2d 328, 349–50 (E.D.Pa.2003) (rejecting view that *Varity* set a bright-line rule that a claim for equitable relief under § 1132(a)(3) should be dismissed when a plaintiff also brings a claim under § 1132(a)(1)(B)); *Moore v. First Union Corp.,* C.A. No. 00–2512, 2000 WL 1052140, at *1 (E.D.Pa. July 24, 2000) (same); *Parente v. Bell Atlantic–Pa.,* C.A. No. 99–5478, 2000 WL 419981, at *4 (E.D.Pa. Apr. 18, 2000) (permitting plaintiff to proceed under both § 1132(a)(1)(B) and (a)(3) until it can be determined whether § 1132(a)(1)(B) in fact provides plaintiff appropriate relief from her injuries), *with Emil v. UNUM Life Ins. Co. of Am.,* C.A. No. 02–2019, 2003 U.S. Dist. LEXIS, at *7 (M.D.Pa. Feb. 4, 2003) (holding "Congress' creation of a specific remedy for the wrongful denial of benefits in § 1132(a)(1) makes it inappropriate for Plaintiff to pursue an overlapping claim for breach of fiduciary duty"); *Post v. Hartford Life & Accident Ins. Co.,* C.A. No. 02–1917, 2002 WL 31741470, at *3 (E.D.Pa. Dec. 6, 2002) (dismissing plaintiff's fiduciary duty claim because "a claim for wrongful denial of benefits cannot be maintained under § 1132(a)(3).") (quoting *Blahuta–Glover v. Cyanamid Long Term Disability Plan,* No. 95–7069, 1996 WL 220977, at *5 (E.D.Pa. Apr. 30, 1996)).

Under the circumstances of this case, we conclude that at this juncture, consistent with *Varity,* Plaintiff can simultaneously seek benefits under §

1132(a)(1)(B) and "other appropriate equitable relief" under § 1132(a)(3)(B).[FN5] At this stage, we cannot know whether Plaintiff will be able to prove his entitlement to benefits under § 1132(a)(1)(B). If it is later apparent that Plaintiff is ineligible to pursue a claim for benefits under § 1132(a)(1)(B), then Plaintiff's only remedy may be to pursue his claim for breach of fiduciary duty and seek "other appropriate equitable relief" under the catchall remedial section, § 1132(a)(3)(B). Therefore, Plaintiff will be permitted to maintain his claim under § 1132(a)(3)(B). *See Varity,* 516 U.S. at 515 (upholding the right of plaintiffs seeking benefits to state a claim under § 1132(a)(3)(B) when they have no other remedy). Of course, if it is determined that Plaintiff can obtain "adequate relief" under § 1132(a)(1)(B), then "further equitable relief ought not be provided." *Ream,* 107 F.3d at 152.

> FN5. In so holding, we express no opinion whether or not, in different circumstances, it might be appropriate to dismiss a claim on the pleadings for breach of fiduciary duty under § 1132(a)(3)(B) when a plaintiff brings a parallel claim for benefits under § 1132(a)(1)(B).

Our conclusion is supported by *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.,* 188 F.3d 130 (3d Cir.1999), a case that is somewhat similar to this case. In *Skinner,* the plaintiffs asserted simultaneous claims under §§ 1132(a)(1)(B) and (3)(B). The plaintiffs' § 1132(a)(1)(B) claim was based on the theory that they were contractually owed benefits under their benefit plan, and their § 1132(a)(3)(B) claim was based on the theory that they were damaged by the defendant's affirmative misrepresentations. In a footnote, the Third Circuit stated that "[i]t is clear that even if a court rejects a breach of contract claim, a party may nevertheless pursue a breach of fiduciary duty cause of action." *Skinner,* 188 F.3d at 148 n. 6 (citing *In re Unisys Corp. Retiree Med. Benefit*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
(Cite as: 2004 WL 1084658 (E.D.Pa.))

*"ERISA" Litig.*, 57 F.3d 1255, 1264 n. 13 (3d Cir.1995)). Interestingly, the district courts within this circuit that have considered whether plaintiffs can simultaneously bring claims for benefits under §§ 1132(a)(1)(B) and (3)(B) have not cited *Skinner* as controlling on this issue. However, we think that *Skinner* demonstrates that a plaintiff who fails to prove that he is contractually entitled to benefits may nevertheless pursue a breach of fiduciary duty claim under ERISA, a result that is consistent with *Varity*. It is too early in these proceedings to decide whether Plaintiff is contractually entitled to benefits under the Plan. If Plaintiff is not entitled to benefits under the Plan, Plaintiff might still be entitled to "other appropriate equitable relief" to remedy any breaches of fiduciary duty by Defendants. For all of the above reasons, we reject Defendants' argument that *Varity* mandates dismissal of Count I.

2. The impact of *Great-West Life & Annuity Ins. Co. v. Knudson*

*5 In *Great-West,* the Supreme Court found that an insurance company who had sued to enforce a reimbursement provision in an ERISA plan was not seeking "other appropriate equitable relief" authorized by § 1132(a)(3)(B). The insurance company, Great West, claimed to seek restitution, which it characterized as an equitable remedy. However, the Supreme Court concluded that not "all relief falling under the rubric of restitution is available in equity." *Great-West,* 534 U.S. at 212. Whether restitution is a legal or equitable remedy depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought. *Id.* at 213. Because *Great-West* sought to impose personal liability on the defendants for a contractual obligation to pay money, the Supreme Court concluded that it was seeking a legal remedy not authorized by § 1132(a)(3)(B). Courts applying *Great-West* are split over whether a plaintiff alleging a breach of fiduciary duty and seeking benefits is seeking a legal or equitable remedy. *Compare, e.g., Godshall v. Franklin Mint Co.,* 285 F.Supp.2d 628, 634 (E.D.Pa.2003) (permitting plaintiffs to seek

restitution of benefits owed under § 1132(a)(3)(B)), *with Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 445 (S.D.N.Y.2002) (holding *Great-West* barred beneficiary's claim for insurance money that she would have received if not for the fiduciary's breach).

In this case, Plaintiff seeks a variety of remedies for Defendants' purported breach of their fiduciary duties. Some of the remedies Plaintiff seeks are legal, and some are equitable. For example, Plaintiff seeks "compensatory damages," clearly a legal remedy barred by *Great-West.* On the other hand, Plaintiff also seeks an award of prejudgment interest, an equitable remedy that is authorized by § 1132(a)(3)(B). *See Fotta v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974,* 165 F.3d 209, 213 (3d Cir.1998). With respect to Plaintiff's claim for restitution, we conclude that Plaintiff is seeking a legal remedy that is barred by *Great-West.* The theory of Plaintiff's case is that Defendants wrongfully failed to pay him the benefits he was due under the Plan. "A claim for money due and owing under a contract is 'quintessentially an action at law.' " *Great-West,* 534 U.S. at 210 (quoting *Wal-Mart Stores, Inc. v. Wells,* 213 F.3d 398, 401 (7th Cir.2000)); *see also Great-West,* 534 U.S. at 210 ("Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting)). We conclude that Plaintiff's claim for restitution seeks a legal remedy. Our conclusion is also supported by dicta in a recent Third Circuit case, suggesting that a claim for restitution of benefits under § 1132(a)(3)(B) would be barred by *Great-West.* *See Horvath v. Keystone Health Plan East, Inc.,* 333 F.3d 450, 457 n. 3 (3d Cir.2003). Thus, we will grant Defendants' motion to dismiss Count I to the extent Plaintiff seeks restitution of benefits and compensatory damages.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
(Cite as: 2004 WL 1084658 (E.D.Pa.))

C. Count II—ERISA's Penalty Provision [FN6]

> FN6. Defendants do not seek dismissal of Count V which states a claim for bad faith under UNUM's law based upon UNUM's alleged breach of Plaintiff's individual policies.

*6 In Count II Plaintiff seeks an award of penalties pursuant to 29 U.S.C. § 1132(c) for Defendants' failure to turn over certain Plan documents that Plaintiff requested. Defendants move to dismiss Count II on the grounds that they provided all the documents they were required to disclose under ERISA.

It is axiomatic that we may not consider materials outside the complaint when ruling on a motion to dismiss unless we convert that motion to one for summary judgment. See Boyle v. Governer's Veterans Outreach & Assistant Ctr., 925 F.2d 71, 74–75 (3d Cir.1991). Plaintiff has not had an opportunity to conduct discovery or submit evidence in support of its claim that Defendants failed to turn over certain Plan documents that he requested. Accordingly, it would be premature for us to assess Plaintiff's claim at this time. We will therefore deny Defendants' motion to dismiss Count II.

D. Count VI—ERISA Bad Faith Claim

Count VI asserts "a claim for bad faith under ERISA," but does not cite any provision of ERISA authorizing a cause of action for bad faith denial of benefits. We will construe this claim as though Plaintiff is asserting that Defendants are liable for bad faith under Pennsylvania state law for violating ERISA. Defendants move to dismiss this claim on two grounds. First, they claim that the Pennsylvania bad faith statute, 42 PA. CONS.STAT. ANN. § 8371, does not fall within ERISA's savings clause, 29 U.S.C. § 1144(b). ERISA provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this

subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Thus, a state law relating to an employee benefit plan is preempted by ERISA unless it falls within ERISA's savings clause, which exempts from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b). In Kentucky Assoc. of Health Plans v. Miller, 123 S.Ct. 1471 (2003), the Supreme Court set forth a two-part test to determine whether a state law regulates insurance for purposes of ERISA's savings clause. Plaintiff and Defendants disagree about whether section 8371 regulates insurance, and therefore whether it falls within ERISA's savings clause.

Defendants claim that even if section 8371 regulates insurance, it is still preempted by ERISA because it enlarges the remedies that are otherwise available under ERISA. The Supreme Court has stated that Congress intended ERISA's civil enforcement provisions to "be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits...." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987). "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Id. at 54. Thus, state statutes that act to enlarge the remedies that are not otherwise available to plaintiffs under ERISA are preempted. See Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 145 (1990) (finding a Texas state cause of action preempted by ERISA because it duplicated a cause of action under ERISA and provided remedies not available under ERISA); Pilot Life, 481 U.S. at 56 (finding Mississippi state causes of action preempted by ERISA and noting that Congress' "expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop ... would make little sense if the remedies available to ERISA

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
(Cite as: 2004 WL 1084658 (E.D.Pa.))

participants and beneficiaries ... could be supplemented or supplanted by varying state laws"); *see also Pane v. RCA Corp.,* 868 F.2d 631, 635 & n. 2 (3d Cir.1989) (finding Pennsylvania causes of action preempted by ERISA to the extent they would support an award of punitive damages because punitive damages are not available under ERISA).

*7 We agree that section 8371 enlarges the remedies that are otherwise available to plaintiffs under ERISA. We also agree that because section 8371 enlarges ERISA's remedies, it is preempted even if it falls within ERISA's savings clause. Accordingly, we need not decide whether or not section 8371 regulates insurance for purposes of ERISA's savings clause.

Generally, if a state statute falls within ERISA's savings clause, it is "saved" from preemption. However, the Supreme Court has "recognized a limited exception from the savings clause for alternative causes of action and alternative remedies." *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 381 (2002). Thus, if a state statute falling within ERISA's savings clause "allows plan participants 'to obtain remedies ... that Congress rejected in ERISA,'" it is preempted. *Rush,* 536 U.S. at 378 (quoting *Pilot Life,* 481 U.S. at 54). The Supreme Court has described this limited exception to ERISA's savings clause as "*Pilot Life's* categorical preemption." *Id.* at 380.

It is clear that section 8371 provides relief to plaintiffs that is not available under ERISA. For example, section 8371 "allows an ERISA-plan participant to recover punitive damages for bad faith conduct, thus 'expand[ing] the potential scope of ultimate liability imposed upon employers by the ERISA scheme.'" *Dolce v. Hercules Inc. Ins. Plan,* C.A. No. 03–cv–1747, 2003 WL 22992148, at *4 (E.D.Pa. Dec. 15, 2003) (quoting *Sprecher v. Aetna U.S. Healthcare, Inc .,* C.A. No. 02–cv–580, 2002 WL 1917711, at *7 (E.D.Pa. Aug. 19, 2002)). A number of district courts within this circuit have found that section 8371 is preempted by ERISA, regardless of whether it falls

within ERISA's savings clause. *See, e.g., Dolce,* 2003 WL 22992148, at *4; *Nguyen v. Healthguard of Lancaster, Inc.,* 282 F.Supp.2d 296, 306–7 (E.D.Pa.2003); *Morales v. First UNUM Life Ins. Co. of Am.,* C.A. No. 03–cv–925, 2003 WL 22097493, at *2 (E.D.Pa. May 27, 2003); *Snook v. Penn State Geisinger Health Plan,* 241 F.Supp.2d 485, 493 (M.D.Pa.2003); *Emil v. UNUM Life Ins. Co. of Am.,* C.A. No. 02–2019, 2003 WL 256781, at *3 (M.D.Pa. Feb. 5, 2003); *McGuigan v. Reliance Standard Life Ins. Co.,* 256 F.Supp.2d 345, 348–49 (E.D.Pa.2003); *Sprecher,* 2002 WL 1917711, at *7; *Kirkhuff v. Lincoln Technical Inst., Inc.,* 221 F.Supp.2d 572, 576 (E.D.Pa.2002).

Two district judges within this circuit have come to a different conclusion, namely, that if a state statute falls within ERISA's savings clause, it is "saved" from preemption even if it expands the remedies available to plaintiffs under ERISA. *See Stone v. Disability Mgmt. Servs., Inc.,* 288 F.Supp.2d 684, 695–96 (M.D.Pa.2003); *Rosenbaum v. UNUM Life Ins. Co. of Am.,* C.A. No. 01–6758, 2003 WL 22078557, *7–*9 (E.D.Pa. Sept. 8, 2003). In *Rosenbaum,* the court examined the Supreme Court's decisions in *Rush* and *Pilot Life* and found that the portions of those opinions addressing conflict preemption were dicta and therefore not binding. The *Rosenbaum* court then examined ERISA's savings clause and found that in writing the savings clause, "Congress' intent was clear, it wanted all state laws which regulate insurance to be exempt from preemption under ERISA." *Id.* at *8. In sum, the *Rosenbaum* court held that if a state statute regulates insurance and qualifies for ERISA's savings clause, it is not subject to preemption under *Pilot Life. Id.* at *9.

*8 We conclude that we are not free to disregard those portions of the *Rush* and *Pilot Life* opinions addressing preemption. In *Pilot Life,* an employee brought common law contract and tort claims against the insurance company that issued his employer's group insurance policy. Two years after the employee was injured in a work related accident, the insurance

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
**(Cite as: 2004 WL 1084658 (E.D.Pa.))**

company terminated his benefits under his employer's disability benefit plan. The plaintiff employee then sued under state law for both compensatory and punitive damages. The insurance company moved for summary judgment, arguing that ERISA preempted the plaintiff's common law claims. The district court agreed with the insurance company's preemption argument, but the court of appeals reversed. The Supreme Court then granted certiorari to determine whether or not the plaintiff's state law claims were preempted by ERISA.

In answering this question, the Supreme Court first concluded that each of the plaintiff's claims met the criteria for preemption under ERISA's preemption provision, 29 U.S.C. § 1144(a). *Pilot Life,* 481 U.S. at 48. Thus, unless those claims fell within an exception to that provision, they were preempted. *Id.* The Court then considered whether or not those claims fell within ERISA's savings clause. It concluded that the claims did not regulate insurance and therefore did not qualify for the savings clause. The Court stated that it was "obliged in interpreting the saving clause to consider ... the role of the saving clause in ERISA as a whole." *Id.* at 51. Thus, an "understanding of the saving clause must be informed by the legislative intent concerning [ERISA's] civil enforcement provisions," which, the Court said, were "intended to be exclusive." *Id.* at 52. Those provisions allow persons alleging violations of ERISA to "sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *Id.* at 53. No provision, however, authorizes plaintiffs to recover punitive damages. *Id.* Accordingly, the Court found the state claims (which authorized both punitive and compensatory damages) were preempted by ERISA.

In *Rush,* the Court again considered whether a state statute was preempted by ERISA. The statute under review required health maintenance organizations (HMOs) to provide an independent review of disputes between primary care physicians and HMOs, and to cover services deemed medically necessary by

the independent reviewer. The Court agreed with *Rush,* the HMO, that the statute was subject to preemption under § 1144(a). However, the Court also held that the statute fell within ERISA's savings clause because it regulated insurance. *Rush,* 536 U.S. at 373.

Citing *Pilot Life,* Rush argued that even if the statute fell within ERISA's savings clause, it was still preempted because it expanded the remedies that are otherwise available to plaintiffs under ERISA. Rush claimed that the independent review procedure was a form of binding arbitration that supplemented or supplanted the remedies available under ERISA. The Court concluded that "Rush overstate[d] the rule expressed in *Pilot Life.*" *Rush,* 536 U.S. at 378. In both *Pilot Life* and *Ingersoll-Rand,* the Court had found state laws preempted by ERISA because they "provided a form of ultimate relief in a judicial forum that added to the judicial remedies provided by ERISA." *Id.* at 379. In *Rush,* however, the state regulatory scheme under consideration "provide[d] no new cause of action under state law and authorize[d] no new form of ultimate relief." *Id.* In other words, a plaintiff utilizing the state scheme in *Rush* could obtain nothing more than the benefits available in any action brought under § 1132(a). For this reason, the Court held that the statute in *Rush* did "not fall within *Pilot Life's* categorical preemption." *Id.* at 380.

**\*9** Reading *Rush* and *Pilot Life* together, we conclude that there are a class of state statutes that are categorically preempted by ERISA, regardless of whether those statutes otherwise qualify for ERISA's savings clause. The class of statutes that are categorically preempted are those that "provide[ ] a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA." *Rush,* 536 U.S. at 379. Section 8371 is just such a statute. It "allows an ERISA-plan participant to recover punitive damages for bad faith conduct, thus 'expand[ing] the potential scope of ultimate liability imposed upon employers by the ERISA scheme." ' *Dolce,* 2003 WL

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)
**(Cite as: 2004 WL 1084658 (E.D.Pa.))**

22992148, at *4. Accordingly, it is subject to *Pilot Life's* categorical preemption. We note that the courts of appeals that have considered this issue have unanimously concluded that that state statutes that fall within ERISA's savings clause may still be preempted if they run afoul of *Pilot Life. See Conover v. Aetna U.S. Health Care, Inc.,* 320 F.3d 1076, 1078 (10th Cir.2003) ("A state law otherwise regulating insurance within the meaning of [ERISA's savings clause] may still be preempted if it allows plan participants and beneficiaries 'to obtain remedies under state law that Congress rejected in [ERISA]' ") (citations omitted); *Singh v. Prudential Health Care Plan, Inc.,* 335 F.3d 278, 286 (4th Cir.2003) (holding that though state statute fell within ERISA's savings clause, "courts must still assess whether the otherwise saved State law nonetheless frustrates the overall purposes of ERISA by inappropriately supplementing or supplanting ERISA's exclusive remedies"); *Elliot v. Fortis Benefits Ins. Co.,* 337 F.3d 1138, 1144 (9th Cir.2003) (declining to consider whether state statute fell within ERISA's savings clause because the statute was preempted by *Pilot Life* ). Accordingly, we will dismiss Plaintiff's claim for bad faith under Count VI.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of February, 2004, upon consideration of Defendant UNUM Life Insurance Company of America's Motion to Dismiss Counts I, II, III, and VI of Plaintiff's Amended Complaint (Doc. No. 3.), and Plaintiff's Request to File a Sur Reply to Defendants' Reply Brief in Support of Motion to Dismiss Counts I, II, III, and VI of Complaint (Doc. No. 6), and all papers filed in support thereof or opposition thereto, it is ORDERED that:

1. Plaintiff's Request to File a Sur Reply is GRANTED;

2. Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. To the extent Plaintiff seeks restitution of benefits or compensatory damages under Count I, those claims are dismissed. Count VI is dismissed in its entirety. In all other respects, Defendants' Motion is DENIED.

IT IS SO ORDERED.

E.D.Pa.,2004.
Tannenbaum v. UNUM Life Ins. Co. of America
Not Reported in F.Supp.2d, 2004 WL 1084658 (E.D.Pa.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.)))**

⊬

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)

United States Court of Appeals,
Third Circuit.
Martha Jane TOY, individually, and as Executrix of the Estate of Russell Toy, Appellant/Cross Appellee,
v.
PLUMBERS & PIPEFITTERS LOCAL UNION NO. 74 PENSION PLAN, Trustees of Plumbers & Pipefitters Local Union No. 74 Pension Plan, Health & Welfare Plan, Local No. 74 Welfare Benefit Plan, Local No. 74 Life Insurance Plan, Administrators of Welfare and Insurance Plans, Trustees of Plumbers & Pipefitters Local Union No. 74 Welfare Plan, Trustees/Plan Administrators of Welfare Plans, Insurance Plans, and Health Plans, Appellees/Cross Appellants.

Nos. 07-3489, 07-3515.
Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 8, 2008.
Opinion Filed: March 18, 2009.

**Background:** Beneficiary sued administrator of benefit plan governed by Employee Retirement Income Security Act (ERISA), challenging denial of pension, welfare, and insurance benefits, and claiming breach of fiduciary duties. Following transfer, the United States District Court for the District of Delaware, Joseph J. Farnan, Jr., J., 439 F.Supp.2d 337, dismissed complaint and granted administrator partial summary judgment, and 497 F.Supp.2d 591, denied benefi-

ciary's motion for reconsideration and administrator's motion for attorney fees. Both parties appealed.

**Holdings:** The Court of Appeals, McKee, Circuit Judge, held that:
(1) breach of fiduciary duty claim seeking unspecified monetary compensation was precluded;
(2) ERISA claims for pension, welfare, and insurance benefits were time-barred; and
(3) award of attorney fees was not warranted.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Labor and Employment 231H ⟜662**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
                231Hk658 Judgment and Relief
                    231Hk662 k. Damages. Most Cited Cases

In suit claiming breach of fiduciary duty by ERISA plan administrator due to denial of pension, welfare, and insurance benefits, beneficiary's unspecified demands for monetary compensation not addressed to particular fund in administrator's possession were precluded, under ERISA provision limiting remedies available to equitable relief, since demands sought legal rather than equitable remedies. Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**[2] Labor and Employment 231H ⟜679**

EXHIBIT 7

317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.)))**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
         231HVII(K)5 Actions to Recover Benefits
            231Hk679 k. Time to Sue and Limitations. Most Cited Cases

Delaware's one-year statute of limitations for employment disputes, rather than Pennsylvania's four-limitations period, applied to beneficiary's claims against ERISA plan administrator for denial of pension, welfare, and insurance benefits, since Delaware was transferee forum for suit transferred on grounds of improper forum. 28 U.S.C.A. § 1406; Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.; 10 West's Del.C. § 8111.

**[3] Labor and Employment 231H ⚏717**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
         231HVII(K)7 Costs and Attorney Fees
            231Hk713 Particular Cases
               231Hk717 k. Actions to Recover Benefits. Most Cited Cases

Beneficiary's filing of suit in Pennsylvania rather than Delaware, challenging ERISA plan administrator's denial of pension, welfare, and insurance benefits, was not conducted in willful bad faith, precluding award of attorney fees to administrator as prevailing party, since beneficiary's initial filing in Pennsylvania resulted from effort to avail herself of best possible legal outcome, rather than desire to litigate without purpose and without regard to merits. 28 U.S.C.A. § 1927; Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

*170 Appeal from the United States District Court for the District of Delaware, Civil No. 05-cv-0760, (Honorable Joseph J. Farnan, Jr.).John M. Stull, Esq., Wilmington, DE, for Plaintiff-Appellant.

*171 Curtis J. Crowther, Esq., Doungamon F. Muttamara-Walker, Esq., Timothy J. Snyder, Esq., Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Defendants-Appellees.

Before: McKEE, SMITH, and ROTH Circuit Judges.

OPINION

McKEE, Circuit Judge.

**1 Martha Jane Toy appeals the district court's order denying her motion for reconsideration of the court's dismissal of Toy's complaint and granting partial summary judgment in favor of the defendants. Defendants have cross appealed the court's denial of their motion for attorneys' fees under 29 U.S.C. § 1132(g)(1) and/or 28 U.S.C. § 1927. For the reasons that follow, we will affirm in part and reverse in part, and remand for further proceedings.

**I.**

We have jurisdiction pursuant to 28 U.S.C. § 1291. Inasmuch as we write primarily for the parties who are familiar with this case, we need not recite the facts or procedural background except insofar as may be helpful to our brief discussion.

We review the court's denial of attorneys' fees under ERISA § 502(g)(1), as well as its denial of a motion for reconsideration, for abuse of discretion. *See Ellison v. Shenango, Inc. Pension Bd.,* 956 F.2d 1268, 1273 (3d Cir.1992) and *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1203 (3d Cir.1995) respectively. However, when the denial of reconsideration is predicated on an issue of law, our review is plenary; if it is based on a factual finding, we review for clear error. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 673 (3d Cir.1999).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.)))**

## II.

Motions for reconsideration are intended to allow a district court to correct manifest errors of law or fact, present newly discovered evidence, or to prevent manifest injustice. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). They may be granted if the moving party shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Quinteros,* 176 F.3d at 677. Here, the district court held that Toy failed to put forth any legal theory or factual information that would justify reconsideration of the dismissal of her claim or the grant of partial summary judgment in favor of the defendants. We agree.

[1] Toy has not cited any newly discovered evidence or legal precedent relevant to her breach of fiduciary duty claim or the court's application of Delaware's statute of limitations. Moreover, she does not even mention any manifest injustice that might require reconsideration of the court's order. Thus, we conclude that she is arguing that the district court's order was based on an error of law. We find no error.

*Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), plainly supports the district court's dismissal of Toy's breach of fiduciary duty claim. Knudson limits the remedies available under ERISA § 502(a)(3) to "equitable relief." *Id.* at 214, 122 S.Ct. 708. Therefore, demands for monetary compensation that are not addressed to a particular fund cannot be brought pursuant to this section. Such demands constitute legal, rather than equitable, remedies. *Id.* (allowing ERISA petitioners to claim access to funds by way of § 502(a)(3) only where "where money or **\*172** property identified ... could clearly be traced to particular funds or property in the defendant's possession"). Toy seeks

generally to "retain funds due" and "to allow transfer of said funds" for her benefit pursuant to § 502(a)(3). (Compl.¶ 25, Appx.82.) The district court correctly defined this as an unspecified request for a money judgment that cannot be traced to certain property or funds in the appellants' possession, and thoroughly explained why Toy's complaint did not state a claim under ERISA. *See Toy v. Plumbers & Pipefitters Local No. 74, Pension Plan,* 439 F.Supp.2d 337, 342 (D.Del.2006) ("Plaintiff is recharacterizing her efforts to obtain a money judgment against the defendants as an equitable remedy .... (e)ven if the Court were to accept the characterization ... as [a claim for] restitution, it would still be a claim 'to obtain a judgment imposing merely personal liability upon the defendant to pay a sum of money.' ").

**\*\*2** [2] Similarly, the district court did not err in applying Delaware's statute of limitations. Although we have not specifically ruled on the issue, we find no fault with the district court's reliance on Supreme Court *dicta,* and guidance from our sister courts of appeals as well as our own analogous jurisprudence to determine which state's law applies when a case is transferred pursuant to 28 U.S.C. § 1406. *See, e.g., Williams v. Bitner,* 455 F.3d 186, 191-92 (3d Cir.2006)(endorsing district court use of decisions from other circuits and principles from existing Third Circuit case law in determining an unsettled area of law). We therefore uphold its ruling that the law of the transferee forum applies under the circumstances here.

## III.

[3] In order to award attorneys' fees under 28 U.S.C. § 1927, a court must find that an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct. *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions,* 278 F.3d 175, 188 (3d Cir.2002). A court must also find that a party demonstrated willful bad faith before ordering the imposition

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.)))**

of attorneys' fees under § 1927. *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1191 (3d Cir.1989). We agree with the district court's conclusion that Toy's filing in Pennsylvania resulted from an effort to avail herself of the best possible legal outcome, rather than a desire to litigate without purpose and without regard to the merits. Accordingly, we hold that the district court did not abuse its discretion in refusing to award attorneys' fees pursuant to § 1927. The court correctly concluded that Toy's counsel should not be found "culpable for taking a losing position in the litigation." *Toy v. Plumbers & Pipefitters Local No. 74 Pension Plan,* 497 F.Supp.2d 591, 596 (D.Del.2007).

Nevertheless, we are concerned about the analysis the district court applied in deciding that attorneys fees are not warranted pursuant to 29 U.S.C. § 1132(g)(1). In *Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3d Cir.1983), we listed five factors that must be addressed in determining if attorneys' fees are warranted under ERISA. However, here, the court only considered two of the five; the court considered whether Toy demonstrated bad faith and the relative merits of the parties' positions. *Ursic* requires an analysis of the remaining factors as well. *See McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., Inc.,* 33 F.3d 253, 254 (3d Cir.1994); *Anthuis v. Colt Indus. Operating Corp.,* 971 F.2d 999, 1012 (3d Cir.1992) ("[The district court] must articulate its considerations, its analysis, its **\*173** reasons and its conclusions touching on each of the five factors delineated in *Ursic.*"). Accordingly, we will remand for the district court to complete its *Ursic* analysis and to afford the court an opportunity to rule on the motion for attorneys' fees based on all of the *Ursic* factors.

## IV.

**\*\*3** For the reasons set forth above, we will affirm the district court's order granting partial summary judgment to defendants and dismissing Toy's complaint for failure to state a claim. We will vacate the court's order denying attorneys' fees and will remand for further proceedings consistent with this opinion.

C.A.3 (Del.),2009.
Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan
317 Fed.Appx. 169, 2009 WL 692398 (C.A.3 (Del.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 8



KENNETH ZAHL, M.D., individually and on assignment of his patients, Plaintiff, v. CIGNA CORPORATION; JOHN AND JANE DOES 1-100, Fictitious Persons or Entities, Jointly, Severally, and Alternatively, Defendants.

Civ. Action No. 09-1527 (KSH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2010 U.S. Dist. LEXIS 32268*

March 31, 2010, Filed

NOTICE:    NOT FOR PUBLICATION

COUNSEL: [*1] KENNETH ZAHL, M.D., individually, KENNETH ZAHL, M.D., on ASSIGNMENT of his PATIENTS, Plaintiffs, Pro se, MORRISTOWN, NJ.

For CIGNA CORPORATION, Defendant: ERIC EVANS WOHLFORTH, LEAD ATTORNEY, JENNIFER MARINO THIBODAUX, GIBBONS, P.C., NEWARK, NJ.

JUDGES: Katharine S. Hayden, United States District Judge.

OPINION BY: Katharine S. Hayden

OPINION

**Katharine S. Hayden, U.S.D.J.**

I. INTRODUCTION

This matter comes before the Court on the motion to dismiss [D.E. 14] filed by defendant Cigna Corporation ("Cigna") pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("FRCP") as to Counts One, Three, Four and Five of the amended complaint *pro se* plaintiff Kenneth Zahl filed in federal court. [D.E. 11.] The crux of this lawsuit pertains to Zahl's contention that Cigna has not properly paid for services he rendered as a medical doctor to members of health care plans administered by Cigna or its affiliates. Cigna submits that Counts One, Three and Four set forth, respectively, state law claims for breach of contract, misrepresentation, and unjust enrichment and are preempted by the federal Employment Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1101, et seq.* Additionally, Cigna contends that

Count Five, [*2] in which Zahl seeks recovery for alleged breach of fiduciary duties under ERISA, is impermissibly pleaded as a re-characterization of a claim for benefits.

II. BACKGROUND INFORMATION

a. Factual Allegations

According to the amended complaint, Kenneth Zahl was a licensed physician in New York and New Jersey, specializing in chronic pain treatment. (Am. Compl. P 1.) The complaint states that on May 11, 2006, Zahl's license to practice medicine and surgery in New Jersey was revoked because he was found to have engaged in dishonest or fraudulent practices by over-billing $ 1,949 to Medicare. (*Id.* P 3.) On April 18, 2008, the relevant New York state authorities also revoked his medical license. (*Id.*)

According to Zahl, Cigna is one of the "big five" insurance carriers that provide health benefits to individuals throughout the United States. (*Id.* P 6.) He claims that Cigna issued insurance policies, received payment of premiums, and agreed to cause coverage to be issued to some of his patients. (*Id.* P 12.) He alleges that after he provided treatment to these patients in New Jersey and New York, they billed Cigna for the treatment and it, in turn, "either underpaid (by falsely and fraudulently [*3] using a deflated [Usable and Customary Rate]); or declined to pay for certain procedures, supplies or injectables." (*Id.* P 13.) He brings this lawsuit as a third party beneficiary of his patients' insurance benefits, which he claims he was assigned prior to rendering medical care. (*Id.* P 2.)

b. Causes of Action

In Count One, Zahl pleads a state law cause of action for breach of contract, in which he seeks to recover the health care benefits that he alleges were wrongfully denied by Cigna and/or its affiliates. (*Id.* P 20.) In Count Two, Zahl brings a cause of action under ERISA's *§ 502(a)(1)*, which provides a cause of action for a third party beneficiary seeking payment pursuant to patients' health plan benefits. (*Id.* PP 25-35.) In all, Zahl seeks $ 182,751.52 for his services rendered, plus consequential and compensatory damages, interest fees and costs. (*Id.* P 34.) Cigna does not move for dismissal of Count Two on this motion because it "arguably states a viable claim for benefits under ERISA." (Def.'s Br. 1.) In Count Three, Zahl brings a common law negligent misrepresentation claim, in which he alleges that Cigna promised to pay for his services and that he relied on those promises [*4] to his detriment. (Am. Compl. P 36.) In Count Four, Zahl brings a claim for unjust enrichment against Cigna because, as he asserts, it benefitted from his rendering of services to his patients, and in Count Five, he alleges that Cigna breached the fiduciary duty it owed him under ERISA without specifying the ERISA provision he invokes.

## III. DISCUSSION

Each of Zahl's five claims arises from his third party beneficiary interests, assigned to him by virtue of the medical services he provided to participants in employee benefit plans. (*See generally,* Am. Compl.) Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans; and further to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." *29 U.S.C. § 1001(b).* It is settled in this District that Zahl, as an assignee of these rights, stands in the shoes of his patients and may sue on their behalf to collect unpaid benefits. *See Wayne Surgical Center LLC v. Concentra Preferred Sys., Inc., 2007 U.S. Dist. LEXIS 61137, 2007 WL 2416428 (D.N.J. Aug. 20, 2007)* (Ackerman, J.) (holding that as an assignee [*5] of medical benefits, a medical provider has standing to sue under *§ 502(a) of ERISA*).

## A. State Law Claims under Counts One, Three, and Four

The purpose of ERISA is to provide a uniform regulatory scheme over legal issues relating to employee benefit plans. *See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983).* To this end, ERISA contains two statutory provisions that preempt state law causes of action: *§ 502(a)*, codified as *29 U.S.C. § 1132(a)*, which sets forth a comprehensive civil enforcement scheme foreclosing any state law claim

falling within its scope; and § 514(a), codified as *29 U.S.C. § 1144(a)*, which preempts "any and all state laws" that "relate to any employee benefit plan." These provisions "are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S. Ct. 1895, 68 L. Ed. 2d 402 (1981)).* The Supreme Court has broadly applied these provisions to preempt "the subject of every state law that 'relates to' an employee benefit governed by ERISA." *FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990)* (internal quotation omitted). A plaintiff may not assert [*6] a state law cause of action that "has a connection with or reference to such a plan." *Shaw, 463 U.S. at 97. See also Illingworth v. Nestle U.S.A., 926 F. Supp. 482, 492 (D.N.J. 1996)* ("Because [plaintiff's] claim relates to an employee benefit plan, ERISA preempts New Jersey law, and any entitlement to relief is governed by federal law.").

Here, it is undisputed that each of Zahl's claims involves his rights as a beneficiary under his patients' health benefits. (*See* Am. Compl. P 11 ("Plaintiff Zahl is a third party beneficiary of the health care benefits issued by defendant CIGNA"); P 9 ("Plaintiffs believe that a Federal Court has jurisdiction over this action under [ERISA]"); P 12 ("Pursuant to these insurance policies, defendant Cigna received payment of premiums in [sic] and in consideration, therefore agreed to cause coverage to be issued to a patient of plaintiff. . .").)

In response to Cigna's motion for dismissal of his three state law claims, Zahl argues that the uncertainty of Cigna's role in the administration of the medical benefits at issue here makes it unclear whether his claims trigger ERISA preemption. To this end, he argues that "at this stage of the litigation, there [*7] is a possibility that if Cigna were solely the third party [administrator], that the employer itself might have privity with Zahl and would have to be joined under state law claims." (Pl.'s Br. 6.) Thus, he contends, during discovery "it will be known for sure whether the plans in question are governed or not under ERISA," behooving the Court to deny Cigna's motion to dismiss these claims so early in the litigation. (*Id.*)

ERISA covers two types of health benefit plans--pension plans, *see 29 U.S.C. § 1002(2)(A)*, and welfare plans. *See 29 U.S.C. § 1002(1).* As one of ERISA's preemptive provisions states, "any and all state laws" that "relate to *any employee benefit plan*" are preempted. *29 U.S.C. § 1144(a)* (emphasis added). Counts One (breach of contract), Three (misrepresentation), and Four (unjust enrichment) are state law causes of action involving Zahl's rights as a third party benefi-

2010 U.S. Dist. LEXIS 32268, *

ciary of his patients' health care plan benefits. As such, the Court finds that irrespective of exactly what entity is the insurance company or underwriter, the insurance coverage alleged in the complaint relates to an "employee benefit." No amount of discovery can alter this fact. The state law claims fall  [*8] under the umbrella of ERISA preemption, and Cigna's motion is granted as to Counts One, Three and Four. [1]

> 1   The Court notes that since 2007, Zahl has initiated 19 lawsuits in this District. Recently, Judge Hochberg granted Unitedhealth Group's motion to dismiss state law claims brought by Zahl because they were preempted by ERISA. *Zahl v. Unitedhealth Group Inc.*, Civ. No. 09-1321 (Sept. 24, 2009).

## B. Count Five -- Claim for Breach of Fiduciary Duties under ERISA

In Count Five, Zahl alleges that under ERISA Cigna breached the fiduciary duties it owed him as a third party beneficiary. (*See* Am. Compl. PP 33-34.) As he does in each of his other claims, he seeks damages. (*Id.* P 35.) Cigna argues that this claim should be dismissed because "a claimant pressing a claim for plan benefits under *Section 502(a)(1)*," which Zahl does in Count Two, "cannot re-characterize that claim as one for breach of fiduciary duties under *Section 502(a)(3)*." (Def.'s Br. 12.)

In *D'Amico v. CBS Corporation, 297 F.3d 287, 291 (3d Cir. 2002)*, pension plan participants sued their former employer under ERISA alleging that there had been an illegal partial termination of a plan that entitled all non-vested participants to  [*9] become vested. In finding that a plaintiff who brings a claim for breach of fiduciary duties under ERISA must exhaust his administrative remedies, the Third Circuit held that claims for breach of fiduciary duties may be "synonymous with a claim to enforce the terms of a benefit plan," and are held to the same exhaustion requirements imposed on claims to enforce ERISA-regulated plans. *Id.* Similarly, in *Harrow v. Prudential Insurance Company of America, 279 F.3d 244 (3d Cir. 2002)*, the Third Circuit held that "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." *279 F.3d at 254* (internal quotations omitted).

Relying on these decisions, in *Morley v. Avaya, Inc. Long Term Disability Plan, 2006 U.S. Dist. LEXIS 53720, 2006 WL 2226336, at *23 (D.N.J. Aug. 3, 2006)*, Judge Cooper dismissed a claim by an employee who, in addition to her claims for damages, sought equitable relief under *Section 502(a)(3)* against the threat of future

claim denials by her employer. Judge Cooper rejected plaintiff's argument that such a claim could be viable:

> [*Section 502(a)(3)*]  [*10] provides that a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter." Thus, the relief available under *Section [502(a)(3)(B)]* is limited to "appropriate equitable relief," of which "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"

(*Quoting 29 U.S.C. 1132(a)(3)* and *Varity Corp. v. Howe, 516 U.S. 489, 515, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)* (internal citations omitted)). Judge Cooper granted summary judgment on the claim because plaintiff did not "claim[] any additional relief under her breach of fiduciary duty claim that she is not otherwise potentially entitled to if she prevails on her wrongful denial of benefits claim." *Id.* In response to the plaintiff's argument that because she sought equitable relief under *Section 502(a)(3)* and damages under *502(a)(1)* the claims were not duplicative, Judge Cooper wrote that the equitable relief  [*11] sought "does not constitute 'additional relief' otherwise not provided for in *Section [502(a)(1)]*. Instead, this type of relief is *specifically* provided for and contemplated by the language in *Section [502(a)(1)]*." *2006 U.S. Dist. LEXIS 53720, [WL] at *24* (emphasis in original).

Additionally, in *McCoy v. Bd. of Trustees of Laborers' Int'l Union Loc. No. 222, 188 F.Supp.2d 461, 472, fn. 10 (D.N.J. 2002)*, the plaintiff prevailed on certain claims under ERISA, but Judge Orlofsky granted defendant's motion for summary judgment on the claim of breach of fiduciary duty, holding that the plaintiff could not receive anything under that claim that the court had not already awarded him under his claim for benefits. "Equitable relief for a breach of fiduciary duty claim is not appropriate in that circumstance." *Id.*

The amended complaint contains no indication that Zahl's claim of breach of fiduciary duties is distinct from his claim for benefits in Count Two, which asserts that as the assignee of unspecified patients, he did not receive all the benefits he was due under these patients' health benefit plans. Under this framework, an interpretation or

application of ERISA would be unnecessary. *See Harrow, 279 F.3d at 254* (where [*12] claim calls for interpretation and application of benefits plan, it is a claim for benefits, not breach of fiduciary duty). While *§ 502(a)(3)* creates a cause of action for breach of fiduciary duties imposed by ERISA, the Supreme Court has held that it is a "safety net," or "catch-all" provision allowing for "appropriate equitable relief for injuries caused by violations that *§ 502* does not elsewhere adequately remedy." *Varity Corp, 516 U.S. at 512.* Moreover, unlike the plaintiffs in *Morley* and *McCoy,* Zahl does not even seek different forms of relief in Count Two and Count Five. Instead, he seeks damages in both, further establishing the impermissibly duplicative nature of the two claims and that *§ 502(a)(3)* is unavailable because he does not seek "additional relief" otherwise not provided for in *§ 502(a)(1).* Zahl's claim in Count Five, which will provide him no relief additional to that which he may receive in Count Two, is dismissed.

**IV. Conclusion**

For the foregoing reasons, Cigna's motion to dismiss Counts One, Three, Four and Five of the amended complaint is granted. An appropriate order will be entered.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

**ORDER**

For the reasons expressed   [*13] in the opinion filed herewith, and with good cause appearing;

**IT IS** on this 31st day of March, 2010 hereby

**ORDERED** that Cigna Corporation's motion [D.E. 14] to dismiss Counts One, Three, Four and Five of Zahl's amended complaint [D.E. 11] is **granted.**

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.